[Crim. No. 9575.   In Bank.   May 3, 1966.]

In re RICHARD LEE SWEARINGEN on Habeas Corpus.

Richard Lee Swearingen, in pro. per., and Gilbert F. Nelson, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Respondent.

McCOMB, J.—Following petitioner's plea of guilty to a charge of receiving stolen property, and proceedings conducted pursuant to section 6451 of the Penal Code (now Welf. & Inst. Code, § 3051),[1] the Superior Court of Los Angeles County on May 11, 1965, found petitioner to be a narcotic addict and ordered that he be committed to the California Rehabilitation Center for treatment.

At the time of his commitment, petitioner was on parole under a prior felony conviction.

Petitioner was received at the California Rehabilitation Center's main facility at Corona on May 14, 1965, and remained there until June 21, 1965, a period of 37 days.

While petitioner was at Corona, a diagnostic study of his case was made to evaluate his suitability for treatment at the center, but he was given no tests or treatment. Upon the conclusion that the "problem of criminality and need for control appears to outweigh his admissibility as a treatment candidate at this time," petitioner was sent to Chino for hearing before the Adult Authority on June 21, 1965.

The Adult Authority, following the recommendation of the superintendent of the rehabilitation center, retained jurisdiction and revoked petitioner's parole on June 21, 1965.

After the hearing before the Adult Authority, petitioner was not returned to Corona, but was kept at the Reception-Guidance Center of the California Institution for Men (Chino), which has been designated a branch of the rehabilitation center (see *In re Cruz*, 62 Cal.2d 307, 319, fn. 10 [42 Cal.Rptr. 220, 398 P.2d 412]), pending his return to court.

On July 19, 1965, the superintendent of the rehabilitation center, by the authority granted him by the Director of Corrections under section 5055 of the Penal Code, certified to the superior court that petitioner was not a fit subject for confinement or treatment in the rehabilitation center program.

Thereafter, the superior court directed that petitioner be returned and detained in the Los Angeles County Jail pending further proceedings on the stolen property charge. Petitioner

---

[1]Section 6451 of the Penal Code provided in part: "Upon conviction of a defendant for any crime in any superior court, if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics he shall adjourn the proceedings or suspend the imposition of the sentence and conduct proceedings to ascertain if such person is addicted to narcotics or in imminent danger thereof unless in the opinion of the judge the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section." (Stats. 1963, ch. 1706, p. 3354.)

was transferred to the jail on July 31, 1965, and his probation hearing and sentencing date were set for December 8, 1965.

Petitioner then sought a writ of habeas corpus in the superior court, but his petition was denied. The present habeas corpus proceeding was commenced in this court November 18, 1965.

█ Question: *Was petitioner improperly rejected at the rehabilitation center?*

*Yes.* Section 6453 of the Penal Code (now Welf. & Inst. Code, § 3053), as amended in 1963 and in effect at the time petitioner was committed, provided: "If at any time after 60 days following receipt of a person at the facility [rehabilitation center], the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such . . . rehabilitation facility, he shall return the person to the court in which the case originated for . . . further proceedings on the criminal charges. . . ." (Stats. 1963, ch. 1706, p. 3355.)

Prior to the 1963 amendment, the section provided: "If at any time the Director of Corrections concludes that the person is not a fit subject for confinement or treatment. . . ." (Stats. 1961, ch. 850, p. 2226.)

Thus, by the 1963 amendment, the Legislature narrowed the power of the Director of Corrections to return a person committed to the rehabilitation center, authorizing him to return such a person only if he should conclude, after 60 days following receipt of the person at the facility, that because of excessive criminality or for other relevant reason the person was not a fit subject for confinement or treatment.

The language of the statute clearly requires that an evaluation be made of such persons at the rehabilitation center during a period of 60 days to determine whether or not they are fit subjects for the program.

In the present case, the certification that petitioner was not a fit subject for confinement or treatment was made after the expiration of the 60-day period, but the *conclusion* that he was not a fit subject for confinement or treatment was admittedly made more than three weeks before the expiration of the 60-day period and without petitioner's having been given any tests or treatment at the center.

Under the circumstances, the prescribed procedure was circumvented in petitioner's case.

█ Petitioner was on parole at the time he was committed, but there is nothing in the statute to indicate that parolees

should be treated differently and that the rehabilitation program is reserved for persons who are not on parole.[2] (*People* v. *Rummel, ante,* p. 515 [50 Cal.Rptr. 785, 413 P.2d 673]; *People* v. *Pate,* 234 Cal.App.2d 273, 274-275 [1a] [44 Cal.Rptr. 462].)

■ The order of commitment had no effect upon petitioner's parole status. The power of the Adult Authority under Penal Code section 3060 to suspend or revoke a parole is not limited by the statutory provisions governing commitment of persons addicted to the use of narcotics or who by reason of repeated use are in imminent danger of becoming addicted (now Welf. & Inst. Code, §§ 3000 et seq.). (*People* v. *Rummel, ante,* 515 [50 Cal.Rptr. 785, 413 P.2d 673].)

Here the Adult Authority has revoked petitioner's parole. Should the Adult Authority in the exercise of its discretion now restore petitioner on parole, he should be returned to the trial court for recommitment to the rehabilitation center, subject to the powers of the Director of Corrections under Welfare and Institutions Code section 3053.

The order to show cause is discharged and the petition denied.

Traynor, C. J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.

---

[2]The Legislature, in section 6399 of the Penal Code (now Welf. & Inst. Code, § 3000), set forth its intent with respect to the enactment of the legislation, as follows: "It is the intent of the Legislature that persons addicted to narcotics, or who by reason of repeated use of narcotics are in imminent danger of becoming addicted, shall be treated for such condition and its underlying causes, and that such treatment shall be carried out for nonpunitive purposes not only for the protection of the addict, or person in imminent danger of addiction, against himself, but also for the prevention of contamination of others and the protection of the public. Persons committed to the program provided for in this chapter who are uncooperative with efforts to treat them or are otherwise unresponsive to treatment nevertheless should be kept in the program for purposes of control. . . ." (Stats. 1963, ch. 1706, p. 3351.)

Apparently, when the rehabilitation program was started in 1961, the facilities were limited, and it was the practice not to accept persons under parole for treatment, except in a few cases where prior approval of the Director of Corrections had been obtained. In August 1964, this broad policy of exclusion of dual commitments was altered, and the Department of Corrections determined that all narcotics commitments, including dual commitments, would be evaluated during the 60-day period established by the code.