[Crim. No. 12673.   Second Dist., Div. One.   Aug. 4, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT L. MILLER, Defendant and Appellant.

Clifford B. Scherer for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and George R. Nock, Deputy Attorneys General, for Plaintiff and Respondent.

LILLIE, J.—Defendant, on parole from the state prison on a prior felony conviction, was charged with the sale of heroin (§ 11501, Health & Saf. Code). The cause was submitted on the transcript of the testimony taken at the preliminary hearing; additional testimony was taken. The trial court found defendant guilty. Thereafter on February 17, 1966, upon defendant's request, criminal proceedings were adjourned and the case was certified to department 95 for proceedings under section 3051, Welfare and Institutions Code. On March 8, 1966, an order was entered therein finding defendant was in imminent danger of becoming a narcotic addict and committing him to the Director of Corrections, California Rehabilitation Center. He was received at the center on March 11, 1966, and on April 26, 1966, defendant's parole was revoked by the Adult Authority and he was ordered returned to the state prison. Thereafter on May 26, 1966, the superintendent of the California Rehabilitation Center reported to the trial judge that he evaluated defendant as not a fit subject for treatment at the center; on his certification defendant was returned to the superior court where the proceedings in department 95 were dismissed (June 3, 1966) and criminal proceedings were reinstated. On June 22, 1966, defendant was sentenced to state prison; he appeals from the judgment.

Appellant's main point is that the trial court erred by imposing sentence at a time when he had been improperly rejected from the narcotics rehabilitation program. He says his rejection was improper because the superintendent's conclusion that he was not a fit subject for treatment "was not based on excessive criminality or for other relevant reasons" and "was made prior to the expiration of the sixty (60) day minimum period" as prescribed by section 3053, Welfare and Institutions Code.

Inasmuch as the record on appeal contains no documents indicating the superintendent's reason for concluding that defendant was not a fit subject for treatment at the center or when defendant was rejected, and appellant's exhibits show only that he was committed to the center on March 8, 1966, and his parole was revoked on April 26, 1966, on our own motion we have augmented the record with the superior court file to include the information necessary for a fair determination of this case. ■ In his brief appellant has detailed certain facts concerning what he claims occurred between the time he was received at the center and returned to the court,

but inasmuch as they are not substantiated by even the augmented record, they are not properly before us. (*People* v. *Parriera,* 237 Cal.App.2d 275, 286 [46 Cal.Rptr. 835] ; *People* v. *Carr,* 229 Cal.App.2d 74, 76 [40 Cal.Rptr. 58].)

The superior court file discloses these relevant matters. While a diagnostic study was made by "a detailed and in depth study of [defendant], his case history and the total circumstances surrounding his case" and defendant's criminal history as far back as 1950 (including among other things numerous short term jail commitments, two long jail term commitments for possession of dangerous drugs, escape, 20 serious disciplinary episodes during institutional confinement and aggressive dangerous violence during parole) was reviewed, the report of the superintendent, California Rehabilitation Center, dated May 26, 1966, does not refer to any tests or treatment given to defendant while at the center. It is also obvious that while the superintendent made his report evaluating defendant's unfitness for treatment and certified him to be unfit on May 26, 1966 (more than 60 days after defendant was received at the center [March 11, 1966]), the determination that defendant was not a fit subject for the California Rehabilitation Center was actually made by him sometime prior to the expiration of the 60-day period, more probably on or before April 8, 1966, when defendant's case was referred to the California Adult Authority. The staff recommendation, Adult Authority, dated April 8, 1966, reveals and quotes from the superintendent's conclusion that defendant was not a fit candidate for treatment at the center. In any event, the authority on April 26, 1966, revoked defendant's parole and ordered him returned to the state prison; one of the factors considered by the authority was defendant's rejection by the California Rehabilitation Center. Finally, it is clear that the superintendent's conclusion that defendant was not fit for treatment and the program at the center, based on defendant's lack of amenability and motivation, unwillingness or inability to profit from therapy and rehabilitative programs and need for more control and closer supervision than the center can provide, was transmitted to the California Adult Authority before defendant's parole was revoked.

It is true that before the 60 days expired the superintendent concluded that defendant was not a fit subject for confinement or treatment at the California Rehabilitation Center, and, as in *In re Swearingen,* 64 Cal.2d 519 [50 Cal. Rptr. 787, 413 P.2d 675], after a diagnostic study and the superintendent's conclusion, defendant was sent to another

facility for a parole hearing by the Adult Authority. Defendant, who was given no tests or treatment at the center and who was rejected for treatment on April 8, 1966, less than 30 days after his admission to the center, was prematurely rejected from the rehabilitation program. (*In re Swearingen,* 64 Cal.2d 519, 521 [50 Cal.Rptr. 787, 413 P.2d 675] ; § 3053, Welf. & Inst. Code.) However, within the 60-day period defendant's parole was revoked and he was returned to prison on April 26, 1966. The reports before the Adult Authority at the time of its consideration of defendant's parole indicate that while it knew of defendant's rejection from the center and indeed received the case through referral by the superintendent, his rejection was by no means the sole reason for the revocation of parole. Defendant's extensive criminal record and confinement history, together with his conduct both during confinement and on parole appear to have been the main reasons for the action of the Adult Authority.

The Adult Authority has the full and unfettered power to revoke a parole and order a prisoner on parole returned to prison (§ 3060, Pen. Code) ; it is limited by no statutory provision concerning commitment of persons addicted to the use of narcotics or who, by reason of repeated use, are in imminent danger of becoming addicted. The Adult Authority has the right to exercise its own discretion whether to revoke or suspend parolees or permit them to take treatment under commitment by the trial court to the rehabilitation center. (*People* v. *Ballin,* 66 Cal.2d 80, 82 [56 Cal. Rptr. 893, 424 P.2d 333] ; *In re Teran,* 65 Cal.2d 523, 525-526 [55 Cal.Rptr. 259, 421 P.2d 107] ; *People* v. *Rummel,* 64 Cal.2d 515, 518 [50 Cal.Rptr. 785, 413 P.2d 673] ; *In re Swearingen,* 64 Cal.2d 519, 522 [50 Cal.Rptr. 787, 413 P.2d 675] ; *People* v. *Gallegos,* 245 Cal.App.2d 53, 56-57 [53 Cal. Rptr. 663].)

If defendant's rejection was premature and improper because the superintendent's conclusion that he was not a fit subject for confinement or treatment was made without affording him tests or treatment at the center and prior to the expiration of the 60-day period and was based upon his unamenability to treatment and need for greater control and supervision, the effect of the subsequent action of the Adult Authority and the superintendent was such as to give the trial court no alternative but to enter judgment sentencing defendant on the pending criminal charge. (*People* v. *Ballin,*

66 Cal.2d 80 [55 Cal.Rptr. 893, 424 P.2d 333].) That the trial court has the power to do so is recognized in *People* v. *Gallegos,* 245 Cal.App.2d 53 [53 Cal.Rptr. 663], where, as here, the rejection was premature and no tests or treatment were given to appellant and the conclusion of the superintendent was based on appellant's unamenability to treatment. The court, conceding the primacy of the power of the Adult Authority to revoke parole, vacated the judgment with directions to the trial court to return appellant to the rehabilitation program if the authority reinstated his parole within 30 days, but if the Adult Authority does not so act appellant is "remanded to the trial court for reinstatement of the judgment or rearraignment for sentence." (245 Cal.App.2d at p. 57.) Under *People* v. *Ballin,* 66 Cal.2d 80 [55 Cal.Rptr. 893, 424 P.2d 333], the revocation of parole by the Adult Authority and defendant's subsequent return to prison constituted, as a matter of law, an "other relevant reason" justifying his certification and return by the superintendent to the trial court as unfit for treatment. Recognizing that the Adult Authority's power to revoke parole takes precedence over any commitment to the rehabilitation center, the court in *Ballin* stated: "Furthermore, a person who is serving a prison term is ineligible for treatment at the rehabilitation center, there being no provision in the law to transfer such a person to the rehabilitation center. (*People* v. *Victor,* 62 Cal.2d 280, 295 ▮▮▮ [42 Cal.Rptr. 199, 398 P.2d 391].)

"As a result, after the Adult Authority revoked defendant's parole, and it became necessary to return him to prison, he became ineligible for treatment at the rehabilitation center.

"Under former section 6453 of the Penal Code (now Welf. & Inst. Code, § 3053), it was provided: 'If at any time after 60 days following receipt of a person at the . . . [rehabilitation center], the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such . . . facility, he shall return the person to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted.' (Stats. 1963. ch. 1706. § 8.5, p. 3355.)

"Since defendant became ineligible for treatment at the rehabilitation center by reason of the Adult Authority's revocation of his parole and his subsequent return to prison, there existed, as a matter of law, an 'other relevant reason' for the

Director of Corrections to certify that defendant was unfit for treatment and to return him to the trial court for further proceedings on the criminal charges to which he had pleaded guilty. The Director of Corrections therefore had no alternative but to take the action which he did.

"Under the circumstances, the trial court properly dismissed its commitment order and entered a judgment sentencing defendant on the pending criminal charges." (Pp. 82-83.)

Thus, regardless of the premature and improper rejection of defendant by the superintendent from the rehabilitation program, the subsequent revocation of parole by the Adult Authority rendered defendant as a matter of law ineligible for treatment at the center. Under the circumstances, there was nothing the superintendent could do but to certify defendant as unfit for treatment and return him to the trial court, which he did on May 26, 1966; and there was nothing the superior court could do upon receiving defendant but dismiss its commitment order and enter judgment sentencing him on the pending criminal charge, which it did on June 22, 1966.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.