[Crim. No. 5783. First Dist., Div. One. Jan. 12, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. LEON NICK
COLEY, Defendant and Appellant.

Molly H. Minudri, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Karl S. Mayer, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Defendant filed a timely notice of appeal from a judgment pronounced May 24, 1966 which sentenced him to prison following his conviction of possession of heroin in violation of section 11500 of the Health and Safety Code, with an admitted prior conviction in 1954 for the same offense.

On July 2, 1965, defendant had entered a plea of guilty to the offense of possession (§ 11500), reduced from possession for sale in violation of section 11500.5 of the Health and Safety Code, as charged in the indictment, and admitted the prior conviction. Criminal proceedings were suspended under the provisions of section 6451 of the Penal Code (now Welf. & Inst. Code, § 3051), and on July 20, 1965, he was committed to the California Rehabilitation Center for care and treatment. In February 1966, pursuant to the provisions of section 3053 of the Welfare and Institutions Code (formerly Pen. Code, § 6453), he was returned to the trial court for further proceedings in the criminal action. Defendant then challenged

the Director of Correction's conclusion that he was not a fit subject for confinement or treatment in a narcotic detention, treatment and rehabilitation facility. The trial court upheld the director's conclusion, denied the defendant's application to withdraw his guilty plea, and rendered the judgment from which defendant seeks to appeal.

Although there was no compliance with the provisions of section 1237.5 of the Penal Code,[1] a clerk's transcript and a reporter's transcript were prepared and were certified by the trial judge on July 5, 1966. The defendant urges error (1) in the denial of his motion to dismiss the indictment under the provisions of section 995 of the Penal Code, (2) in the failure to set aside his plea of guilty upon his return from the rehabilitation center, and (3) in the failure to find that the director abused his discretion in refusing to treat defendant and in returning him to the court for further proceedings. The People question the efficacy of defendant's appeal because of the noncompliance with the provisions of Penal Code section 1237.5, and urge that in any event the appeal should be limited in scope to review of the proceedings under section 3053 of the Welfare and Institutions Code.

The defendant is entitled to a review of the action of the trial court upholding the director's conclusion that defendant

---

[1]Penal Code section 1237.5 provides: "No appeal shall be taken by defendant from a judgment of conviction upon a plea of guilty or nolo contendere, except where: (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings; and (b) the trial court has executed and filed a certificate of probable cause for such appeal with the county clerk."

The section is implemented by the provisions of rule 31, California Rules of Court, which read as follows: ". . . (d) In cases in which a judgment of conviction was entered upon a plea of guilty or nolo contendere, the defendant shall file his notice of appeal within 10 days after the rendition of judgment, but the appeal shall not be operative unless the defendant files the statement, and the trial court executes and files the certificate of probable cause, required by section 1237.5 of the Penal Code. The defendant shall file such statement within 10 days after the rendition of judgment and when filed within such period it shall serve as a notice of appeal if no other notice of appeal is filed. Where a timely notice of appeal has been filed, the trial court may, for good cause, permit the filing of the defendant's statement beyond the 10-day period but not later than 40 days after the rendition of judgment. Within 60 days after the rendition of judgment the trial court shall execute and file either a certificate of probable cause or an order denying such a certificate and shall forthwith notify the parties of the granting or denial of such certificate.

"The time for preparing, certifying and filing the record on appeal or for filing an agreed statement shall commence to run when the appeal becomes operative."

was not a fit subject for treatment, and to a review of the order denying his motion to withdraw his plea of guilty. Defendant's attempt to attack the sufficiency of the evidence to support his indictment must be rejected because of the state of the record. No error is found in the ruling of the trial court which upholds the director's conclusion that defendant was not a fit subject for treatment. Since defendant's plea of guilty was tendered and received on the condition he would be accepted for treatment, it was an abuse of discretion to deny his motion to withdraw it. The judgment must be reversed.

*Scope of the Appeal*

Preliminarily, the People moved to dismiss the appeal because the defendant, who had entered a plea of guilty, failed to file the statement or secure the certificate of probable cause required by the provisions of section 1237.5 of the Penal Code. (*People* v. *Gonzales* (1967) 249 Cal.App.2d 522 [57 Cal.Rptr. 587]; and see *People* v. *Davis* (1967) 255 Cal.App. 2d 907 [64 Cal.Rptr. 1].) The defendant then filed a belated statement of probable cause, supported by a certificate of the county clerk, in the trial court. The clerk's certificate concerned his practice, not followed in this case, of notifying a defendant of the requirements of section 1237.5 when those provisions were applicable. On June 18, 1967 the trial court signed and purported to file *nunc pro tunc,* as of May 26, 1966, a certificate of probable cause. The motion to dismiss was withdrawn and taken off calendar, and now the People insist that review is limited to examination of the validity of the proceedings under which defendant was returned to the jurisdiction of the court in the criminal action and sentenced.

The People's change in position appears to be required by the interpretation given the provisions of section 1237.5 in *People* v. *Ward* (1967) 66 Cal.2d 571 [58 Cal.Rptr. 313, 426 P.2d 881]. There the court stated: ''Different rules apply where a defendant attempts to assert the invalidity of his guilty plea than where he is not seeking to vacate the plea but claims, rather, that errors occurred in the proceedings held subsequent to the plea for the purpose of determining the degree of the crime and the penalty to be imposed. In spite of the fact that section 1237.5 refers generally to an appeal 'from a judgment of conviction upon a plea of guilty' it seems clear that the section was intended to apply only to a situation in which a defendant claims that his plea of guilty was invalid.'' (66 Cal.2d at p. 574. See also *People* v. *Davis,*

*supra,* 255 Cal.App.2d 907, 909; and *People* v. *Rogers* (1967)
252 Cal.App.2d 1015, 1020 [61 Cal.Rptr. 48].)

Thus, the proceedings taken to review the director's conclu-
sion that the defendant was not a fit subject for treatment
may be considered. As hereinafter appears, review of the suffi-
ciency of the evidence to support the indictment is precluded
by the insufficiency of the record and other factors. Review of
the denial of defendant's motion to withdraw his plea of
guilty involves an attempt to assert the invalidity of that
plea, and remains dependent on compliance with the provi-
sions of Penal Code section 1237.5 and rule 31(d).

Defendant asserts that the statute fixes no time within
which the statement and certificate must be filed, and that the
provisions of the rules do not prohibit the filing of the certifi-
cate *nunc pro tunc* as of the day following the filing of the
notice of appeal. (See *Osmont* v. *All Persons* (1913) 165 Cal.
587, 591-592 [133 P. 480] ; *Wexler* v. *Goldstein* (1956) 146
Cal.App.2d 410, 412-413 [304 P.2d 41] ; *Wells* v. *Coca Cola
Bottling Co.* (1956) 140 Cal.App.2d 218, 221-223 [294 P.2d
955] ; *Hess* v. *Gross* (1943) 56 Cal.App.2d 529, 530-532 [133
P.2d 1] ; and 3 Witkin, Cal. Procedure (1954) Judgment,
§ 15, pp. 1892-1893.)

The People point out that although such entry is permitted
to correct a clerical error or omission, or to preserve the legi-
timate fruits of litigation, it cannot be used to authorize the
exercise of jurisdiction by a court when the time within which
such jurisdiction could properly be exercised has expired. (*In
re Skerrett* (1889) 80 Cal. 62, 63-64 [22 P. 85] ; and see *Peo-
ple* v. *Black* (1961) 55 Cal.2d 275, 277 [10 Cal.Rptr. 459, 358
P.2d 915].)

The precedents developed under those provisions of section
657 of the Code of Civil Procedure which relate to the neces-
sity of specifying that a new trial was granted for insuffi-
ciency of the evidence are instructive. Although at one time a
*nunc pro tunc* order was permitted to show such a specification,
amendments to the statutory law and their development in the
cases prohibited such a procedure. (See *Opp* v. *Sykes* (1961)
194 Cal.App.2d 208, 211-217 [15 Cal.Rptr. 1], and cases
reviewed; and 3 Witkin, Cal. Procedure (1954) Attack on
Judgment in Trial Court, § 34, subd. (1), p. 2081.) The
earlier precedents which allow *nunc pro tunc* entry do not
avail defendant because they rest on the proposition that the
delayed order may be made to truly express the result of
jurisdiction which was timely exercised. The later precedents

demonstrate a tendency to encourage the finality of judgments, which may be likewise attributed to the detailed provisions of rule 31(d).

█ It has been suggested that where a timely notice of appeal has been filed, a defendant who is unrepresented by counsel should be given leave to apply for a certificate of probable cause after the expiration of the time fixed by the rules. (*People* v. *Davis, supra,* 255 Cal.App.2d 907, 908.) *Davis,* like the instant case, involves the situation where there has been a timely filing of a notice of appeal. It is a legitimate extension of the principle of *People* v. *Herrera* (1967) 66 Cal.2d 664 [58 Cal.Rptr. 319, 426 P.2d 887], which held that where the notice of appeal and the required statement were filed within the time prescribed by law, and the court approved the transcript on appeal, "the trial judge *in effect* certified defendant's case for appeal." (66 Cal.2d at p. 665.) In *Herrera* the defendant was relieved of any penalty attendant to the trial judge's failure to file the certificate. So here, where the transcripts were approved by the trial judge, there is an implied acknowledgement of probable cause for the appeal, and the *nunc pro tunc* certificate merely reflects the true status of the record. The appeal may and should be recognized under the particular circumstances of this case without countenancing an indiscriminate use of *nunc pro tunc* certificates to avoid the limitations set forth in rule 31(d).

*Rejection for Treatment*

█ Defendant was entitled to a review of the conclusion of the Director of Corrections in order to determine whether there had been an abuse of discretion in rejecting him for treatment. (*People* v. *Hannagan* (1967) 248 Cal.App.2d 107, 114-115 [56 Cal.Rptr. 429]; *People* v. *Berry* (1967) 247 Cal. App.2d 846, 849-850 [56 Cal.Rptr. 123]; *People* v. *McCuiston* (1966) 246 Cal.App.2d 799, 804-805 [55 Cal.Rptr. 482]; *People* v. *Pate* (1965) 234 Cal.App.2d 273, 276 [44 Cal.Rptr. 462]; and see *People* v. *Marquez* (1966) 245 Cal.App.2d 253, 256-257 [53 Cal.Rptr. 854]; and *People* v. *McCowan* (1966) 244 Cal.App.2d 624, 627 [53 Cal.Rptr. 406].) The determination of the trial court on this issue is reviewable, despite noncompliance with the provisions of section 1237.5, because it arises in proceedings held subsequent to the plea of guilty to determine the punishment or treatment to be meted out to the defendant.

Section 3053 of the Welfare and Institutions Code provides: "If at any time after 60 days following receipt of a person at the facility, the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such narcotic detention, treatment and rehabilitation facility, he shall return the person to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted."

On November 24, 1965, some four months after defendant was received at the center, Superintendent Roland W. Wood of the Department of Corrections, California Rehabilitation Center at Corona, wrote to the judge of the superior court who had committed defendant to the program. In pertinent part, the letter stated: "Pursuant to the provisions of Welfare and Institutions Code Section 3053 and the authority granted me by the Director of Corrections under Penal Code Section 5055, I hereby certify that Leon N. Coley is not a fit subject for confinement or treatment in the California Rehabilitation Center. This referral to the court is based on Subject's *extensive narcotic sales activities and excessive criminality*." (Italics added.)

The letter indicated that defendant's background of extensive narcotic sales was discovered through a special investigation conducted after defendant's arrival at Corona.[2] It also

---

[2] The letter specifically stated: "At the time of the special investigation, an agent of the State Bureau of Narcotic Enforcement was contacted. This agent stated that Subject was one of the top dealers in San Francisco. The arrest report reflects that at the time of Subject's arrest, he was engaged in the sale of heroin and was in possession of a considerable amount of this narcotic. By Subject's own admission, he was getting about one half ($\frac{1}{2}$) ounce of heroin a day and selling it for a well-known dealer living in Oakland. When you consider that one-half ($\frac{1}{2}$) ounce of heroin equals fifteen (15) grams, which equals one hundred and fifty (150) capsules at $4.00 per capsule, it is evident that Subject's trafficking activity was of serious proportions and far exceeded the amount necessary to supply his own habit.

"In reviewing the entire case, it is noted that Subject's criminal history began as far back as 1945 and includes such crimes as burglary on six separate occasions and numerous arrests for narcotic offenses. It is further noted that Subject was convicted of Possession of Narcotic and subsequently sent to the California Department of Corrections after he violated his probation in 1955. Subject was paroled on three separate occasions and each time he violated his conditions of parole and was returned to finish his commitment. He was finally discharged from this commitment on September 11, 1964; however, he immediately became involved in narcotic and criminal activities as indicated by his numerous arrests on the Criminal Identification and Investigation Report. Subject's criminal activity culminated when he was arrested for Possession of Narcotic and was subsequently committed to the California Rehabilitation Center on July 23, 1965."

reviewed defendant's previous convictions, indicating defendant's unsuccessful record of rehabilitation, after several paroles. The letter concluded: "As evidenced above, Subject presents primary and essential problems of chronic and excessive criminality. Therefore, he is evaluated as not suitable for treatment in the California Rehabilitation Center. . . ."

In March, April and May 1966, defendant, along with several other men returned from the rehabilitation center, participated in a hearing in the superior court, to determine whether their return to the court was proper. Superintendent Wood testified at the hearing, amplifying the basis for defendant's rejection. He indicated that he generally reviewed the file of a person committed to Corona, after his cumulative case summary was completed. The summary contained medical, psychiatric and psychological evaluations, and usually took some 60 to 90 days to complete. Defendant's case summary, as of November 24, 1964, contained a report dated September 14, 1965, made by correctional counselor at the rehabilitation center, as well as the results of the special investigation.

The report of September 14th, completed 53 days after defendant's confinement to the center, stated in part: "He worked at various jobs in the community and has had an institutional training in dry-cleaning and laundry work. His work record has been spotty and he appears to have no significant resources in the community. Release will be dependent upon a definite job offer preferably in the dry-cleaning trade. Subject wants to pursue this during his stay here. At this point, in view of his past failures, as an A number parole . . . subject appears to be an excellent candidate for half-way house placement when he is ready for release."

In addition, Superintendent Wood, testified to and read into the record, a second report, dated December 29, 1965, and completed after the letter returning the defendant to court. This letter stated: "As noted at the time of his social evaluation, subject continues to present himself in an overly conforming manner to staff, his work supervisor, and in the large group. His behavior in the group is that of a skillful manipulator in that he expresses his feelings through loaded questions, which never reveal his own thoughts and allow him to adhere to the 'no snitch code' in the guise of confronting others with their behavior. He uses similar methods to express his feelings toward staff, but when asked to be more direct and say what he feels he assumes a very passive role of inno-

cence in an attempt to imply his complete agreement with staff policy.

"Coley has never focused on himself in the group meetings, and attempts of this group to confront him with his behavior have only met with defensive rationalizations.

"As noted in the classification committee, it appears that Coley talks a good game, but thus far has made no attempts to follow through.

"The writer's opinion that subject's ability to manipulate the group, combined with his over-all life pattern of seeking the path of least resistance, points to a poor prognosis in terms of future introspection and insight."

 Superintendent Wood stated that defendant was returned to court "because of his excessive narcotic sales primarily, but his excessive criminality did have a factor in it, as well." Defendant's excessive criminality is amply demonstrated. By his own testimony, defendant admitted suffering eight prior convictions: (1) second degree burglary in Seattle. Washington, in 1951; (2) petty theft and violation of Business and Professions Code section 240 in California in 1952; (3) violation of Health and Safety Code section 11721 in California in 1953; (4) violation of Health and Safety Code section 11530 in 1954; (5) violation of Health and Safety Code section 11530 in 1955; (6) bunco theft in 1957; (7) battery in 1958; and (8) theft in December 1963.

No abuse of discretion is indicated. The situation is strikingly similar to that in *People* v. *Berry, supra,* where the court observed: "The information before the director and the trial judge showed that defendant had responded to probation in an earlier narcotics offense by engaging in extensive narcotic sales activity which gave rise to his second conviction. He appeared indifferent to his personal obligations and the sanctions of the penal law. The narcotic rehabilitation program requires in the subject a certain amount of cooperation and willingness to accept responsibility. The Director of Corrections did not abuse his discretion in finding that defendant was unfit for commitment and the trial court properly so concluded." (247 Cal.App.2d at p. 852; and see *People* v. *McCuiston, supra,* 246 Cal.App.2d 799, 805; and *People* v. *Marquez, supra,* 245 Cal.App.2d 253, 256-257.)

Defendant's prayer in his opening and reply brief is for a decision of this court directi_g the trial court to order his return to the treatment program. Alternatively, he seeks to overturn his conviction for failure to grant the motion to

dismiss the indictment, and for failure to permit withdrawal of his plea of guilty.

## Denial of Dismissal of Indictment

█ It is unnecessary to consider whether the *nunc pro tunc* certificate extended the scope of the appeal to the alleged error in the failure to dismiss the indictment. The record of the testimony before the grand jury was not made a part of the record on appeal. Under these circumstances the propriety of the order denying the motion to dismiss cannot be reviewed. (*People* v. *Scott* (1944) 24 Cal.2d 774, 777 [151 P.2d 517]; *People* v. *Hardeman* (1966) 244 Cal.App.2d 1, 21 [53 Cal.Rptr. 168]; *People* v. *Perez* (1966) 243 Cal.App.2d 528, 533 [52 Cal.Rptr. 514]; *People* v. *Jones* (1964) 228 Cal. App.2d 74, 90 [39 Cal.Rptr. 302]; *People* v. *Chavez* (1962) 208 Cal.App.2d 248, 253 [24 Cal.Rptr. 895]; *People* v. *Garza* (1958) 160 Cal.App.2d 538, 544 [325 P.2d 200].)

Furthermore, it may be questioned whether a defendant who appears with counsel and pleads guilty may subsequently attack the proceedings leading to his indictment on grounds other than those which go to the jurisdiction of the court, or go to the legality of the proceedings. (See *In re Wells* (1967) 67 Cal.2d 873, 875 [64 Cal.Rptr. 317, 434 P.2d 613]; *People* v. *Laudermilk* (1967) 67 Cal.2d 272, 281 [61 Cal. Rptr. 644, 431 P.2d 228]; and cf. *In re Van Brunt* (1966) 242 Cal.App.2d 96, 108-109 [51 Cal.Rptr. 136] (disapproved in part *In re Smiley* (1967) 66 Cal.2d 606 [58 Cal.Rptr. 579, 427 P.2d 179]]; *People* v. *Gannaro* (1963) 216 Cal.App.2d 25, 28-30 [30 Cal.Rptr. 711]; *People* v. *White* (1963) 213 Cal. App.2d 171, 176 [28 Cal.Rptr. 656]; and *People* v. *Ottenstror* (1954) 127 Cal.App.2d 104, 109 [273 P.2d 289].)

█ Here defendant allegedly attacks the competency of the evidence produced before the grand jury because it was the product of an illegal search and seizure. (*People* v. *Prewitt* (1959) 52 Cal.2d 330, 335 [341 P.2d 1].) He apparently contends that the arrest and search were made on the basis of information from an unknown, untested informer. (See *People* v. *Stewart* (1966) 241 Cal.App.2d 509, 513-514 [50 Cal.Rptr. 630]; and *Saunders* v. *Municipal Court* (1966) 240 Cal.App.2d 563, 565-567 [49 Cal.Rptr. 763].) The facts which he alleges[3] show, however, that although surveillance

---

[3]Defendant's statement of facts is as follows: ''While the room was under surveillance, Mr. Ohlson testified as to conversation overheard from occupants from the room, and translated said conversation to the Grand Jury, by explaining the use of terms used by narcotics [*sic*]. While

may have been instigated on the basis of such unauthenticated information, the arrest, search and seizure were predicated upon activities observed by the officers, which in themselves gave rise to reasonable cause. (See *People* v. *Talley* (1967) 65 Cal.2d 830, 835-836 [56 Cal.Rptr. 492, 423 P.2d 564] ; *In re Teran* (1966) 65 Cal.2d 523, 528-529 [55 Cal.Rptr. 259, 421 P.2d 107] ; *Willson* v. *Superior Court* (1956) 46 Cal.2d 291, 294-296 [294 P.2d 36] ; and *People* v. *Gamboa* (1965) 235 Cal.App.2d 96, 108-109 [51 Cal.Rptr. 136] disapproved in suggested requirement that investigation and surveillance may only be predicated upon information sufficient to constitute probable cause for arrest transcends all established restraints on police action, and poses an irrational burden on the proper investigative function of those charged with law enforcement.

No meritorious grounds appear for attacking the indictment to which defendant entered his plea of guilty.

*Denial of Withdrawal of Plea of Guilty*

After the denial of the defendant's motion to dismiss the indictment, he entered his plea of not guilty to the offense originally charged and admitted the prior conviction. When the assistant district attorney asked if the matter would be tried, the following ensued : '' [Dep. Pub. Def.] : Well, I don't know. If you want to dismiss the prior I will advise him to plead. [Asst. Dist. Atty.] : We just have offered to allow him to plead to the included offense of possession, which makes a big difference on penalty, plead to possession, which is an included offense, instead of possession for sale. The Defendant: You mean I can plead not guilty to it? [Asst. Dist. Atty.] : No. . . . [Dep. Pub. Def.] will explain to you the difference. The Court: What is the difference in time? [Asst. Dist. Atty] : One is 5 to life on the possession and the other is 10 to life, and the mandatory minimum is 5 years on the

---

said room was under surveillance, a male person came to Room 403 and knocked on the door, and stated that he was 'George.' The door was opened, and the officer testified that through the open door he saw a man drop from his hand to the floor a hypodermic outfit which is used for injection of heroin. The officers then entered the room, placed the occupants under arrest and searched the room, finding 14 assorted balloons containing suspected heroin. These were found under the bed in a Philip Morris cigarette box, and in a pair of brown slacks. The officer testified that the defendant was advised as to his rights to remain silent and his right to counsel, and then testified as to a confession made by Mr. Coley. No other heroin was found in the room or in the possession of the other occupants. George Prziborowski, chemist for the California Bureau of Narcotic Enforcement, testified that the substance contained in the balloons were heroin.''

possession, it is a mandatory minimum of 6 years on the possession for sale. It would necessarily mean a difference of at least a year and perhaps more. The Court: Do you understand that? The Defendant: Yes. [Dep. Pub. Def.] : May it please the Court, may I be privileged to inquire from the District Attorney? The Court: Yes. [Dep. Pub. Def.] : Suppose we plead to the possession without possession for sale, with the privilege of starting proceedings, and then if they don't accept him, permit him to withdraw the plea? The Court: All right. [Dep. Pub. Def.] : Is that fair enough? [Asst. Dist. Atty.] : Yes. He would appear to be definitely an addict, from his record. He doesn't have any offenses that I know that would preclude him from— [Dep. Pub. Def.] : I try to get a set of new rules and I can't come up with them, Judge. In any event, at this time, may it please the Court, so the defendant— [Asst. Dist. Atty.] : May it be understood for the record that when I say if they don't take him the plea can be set aside, I am referring to the Judge sending him down. The only reason they can return him now —[Dep. Pub. Def.] : If he doesn't qualify. [Asst. Dist. Atty.] : —if he doesn't cooperate. [Dep. Pub. Def.] : I am talking about the 90 days. If they accept him that is over. The Court: All right. [Asst. Dist. Atty.] : He is going to plead guilty.''

Thereafter, the defendant entered his plea of guilty to the lesser offense, and proceedings were taken pursuant to the provisions of section 6451 of the Penal Code.

Following the hearing to review the defendant's return from the rehabilitation facility to the jurisdiction of the criminal court, the court denied the request of the defendant for recommitment to the rehabilitation center, denied probation and sentenced him to prison. When it appeared that defendant would be sentenced to prison with a five-year minimum term because of his prior conviction, the following occurred: ''[Dep. Pub. Def.] : May it please the Court, Mr. Coley respectfully asks permission to address the Court. The Court: Yes. Defendant Coley: Your Honor, I was wondering was there any chance of my changing my plea? The Court: Well, no. Defendant Coley: Since I have never been tried. The Court: No. . . . [Dep. Pub. Def.] spoke to me about that and I have already expressed my feeling to him. Well, I'd better send him to the State Prison. [Asst. Dist. Atty] : That is the only alternative. Defendant Coley: Your Honor, if it please the Court, I was told to begin with when I first went to CRC that if something like this happened where it was no fault of

my own being excluded I would have a chance to change my plea. The Court: I don't think so. They will give you credit for all the time you have been there.''

Although the clerk's minutes fail to reflect a motion or order in reference to a change of plea, the reporter's transcript sets forth the following colloquy after defendant was sentenced: ''[Dep. Pub. Def.]: Excuse me. May it please the Court, for the record, in the case of Mr. Coley, so we understand, there was a request, a motion to set it aside and enter a plea. And that is denied, is that correct? The Court: Yes.''

 It is recognized that such an order before judgment is not appealable itself, but may be reviewed on appeal from the judgment. (*People* v. *Caruso* (1959) 174 Cal.App.2d 624, 630 [345 P.2d 282]; *People* v. *Moffett* (1955) 137 Cal.App.2d 626, 628 [290 P.2d 667]; *People* v. *Ottenstror, supra,* 127 Cal.App. 2d 104, 111; and see *In re Teran, supra,* 65 Cal.2d 523, 527.) Since the motion to withdraw the plea does not fall within the exception noted in *People* v. *Ward, supra,* 66 Cal.2d 571, 574, review of the order denying the motion would appear to depend upon compliance with the provisions of Penal Code section 1237.5 and rule 31(d). To hold otherwise would be to invite such motions as a matter of course in order to avoid the necessity of complying with the restrictive provisions. Under the circumstances of this case, as has been noted, there has been sufficient compliance, and the propriety of the order should be reviewed.

This conclusion is fortified in this case by the fact if the original plea was in fact improperly induced, it might in any event be reviewed by *coram nobis* or motion to vacate. In *People* v. *Wadkins* (1965) 63 Cal.2d 110 [45 Cal.Rptr. 173, 403 P.2d 429], it was urged that *coram nobis* or a motion to vacate would not lie to attack a conviction predicated upon an alleged invalidly obtained plea of guilty because all of the facts were known to the defendant at the time of judgment. The court concluded, ''there is ample authority for the proposition that one who has pleaded guilty in reliance on the unkept promises of reliable public officials should be allowed to withdraw that plea, even after judgment has been pronounced. This is particularly true where, as here, the judgment as pronounced is alleged to be contrary to the promise which gave rise to the guilty plea.'' (*Id.,* p. 113.)

 Defendant contends ''that his plea of guilty was coerced on the basis that he would be sent for treatment to the California Rehabilitation Center and if he was not accepted at

said Center and returned to the court, his plea of guilty would be set aside."

The record lacks clarity because there is no report of the off-the-record discussion between the attorneys preceding the entry of the plea, nor is there a report of the admitted conversation between the court and defendant's counsel at the time of sentencing almost 11 months later. The colloquy permits the interpretation that if the civil proceedings held as directed by the provisions of Penal Code section 6451 resulted in commitment the plea would stand.

The People concede, however, that defendant's "plea of guilty was entered on the express condition, which was concurred in by both trial court and the prosecutor that he would be recommended to and accepted by the California Rehabilitation Center failing which he would be permitted to withdraw his plea of guilty." They contend that the 90 days referred to by defendant's counsel in the discussion set forth above, was meant to be a reference to the 60 days set forth in section 3053 of the Welfare and Institutions Code, and that if the defendant was held for over that period he should be deemed accepted. (See *In re Swearingen* (1966) 64 Cal.2d 519, 521 [50 Cal.Rptr. 787, 413 P.2d 675].)

The defendant was received at the California Medical Facility at Vacaville—July 23, 1965, and transferred to the California Rehabilitation Center at Corona on August 2, 1965. A report rendered September 14, 1965 indicated that " 'in view of his past failures' . . . as a regular adult felon parole . . . 'subject appears to be an excellent candidate for half-way house placement when he is ready for release.' " The superintendent ordered an independent investigation—an initial field investigation—concerning defendant's background. On November 4, 1965, more than 60 days following defendant's arrival at the facility, the superintendent received the report which indicated that the defendant was a heavy seller of narcotics. On November 24, 1965, the superintendent certified that defendant "is not a fit subject for confinement or treatment in California Rehabilitation Center. This referral to the Court is based on Subject's extensive narcotic sales activities and excessive criminality."

This record does not support the People's hypothesis that the condition was fulfilled. At the time of the acceptance of the plea the prosecutor indicated that he did not know of any offenses of which the defendant had been convicted which

would preclude him from treatment and that the only reason the facility could return the defendant after he was sent down was if he failed to cooperate. The basis of the rejection was not something arising after the acceptance of the defendant at the facility, but information which existed and precluded his acceptance at the time he was received, and which was only developed and revealed later. Under these circumstances, the passage of 60 days could not constitute acceptance. In any event, the 60 days is only a minimum not a maximum period for evaluation. (*In re Swearingen, supra,* 64 Cal.2d 519, 521.) There was merely a delay in determining whether to accept or reject the defendant until sufficient precommitment data could be assembled and evaluated.

"On application of the defendant at any time before judgment the court may, . . . for good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted." (Pen. Code, § 1018, portion.) ▮ The People rely upon the following rules, uniformly applied under the provisions of that section: "A defendant who desires to have his plea of guilty set aside must show good cause therefor. The granting or denial of such an application is a matter resting in the sound discretion of the trial judge whose decision will not be disturbed on appeal in the absence of an abuse thereof. [Citations.]" (*People* v. *Broady* (1953) 120 Cal. App.2d 901, 903 [262 P.2d 669].) ▮ "While a plea of guilty may be withdrawn pursuant to Penal Code section 1018 by reason of the mistake, ignorance, inadvertence or any factor that overcame the defendant's exercise of a free judgment, the basis of the motion for relief 'must be established by clear and convincing evidence.' " (*People* v. *Cooper* (1954) 123 Cal.App.2d 353, 356 [266 P.2d 566]. In accord: *People* v. *Goldman* (1966) 245 Cal.App.2d 376, 380 [53 Cal.Rptr. 810]; *People* v. *Gannaro, supra,* 216 Cal.App.2d 25, 28; *People* v. *Caruso, supra,* 174 Cal.App.2d 624, 633-635; *People* v. *Moffett, supra,* 137 Cal.App.2d 626, 629; and *People* v. *Ottenstror, supra,* 127 Cal.App.2d 104, 109.)

The People assert that the court and the prosecutor proceeded in good faith and that each did all in his power to secure treatment for the defendant. (See *People* v. *Jolke,* (1966) 242 Cal.App.2d 132, 144-145 [51 Cal.Rptr. 171]; and *In re Norman* (1961) 198 Cal.App.2d 105, 107-108 [17 Cal. Rptr. 772].)

▮ The facts up to the original rejection of November 24, 1966, as revealed by the record in this case, do not fit

within the foregoing rules. They come within the ambit of *People* v. *Wadkins, supra,* 63 Cal.2d 110, where the court upheld the right to withdraw a guilty plea where the judgment as pronounced was contrary to the promise which gave rise to the plea. They indicate that defendant was never accepted by the center, and the People concede that failing such acceptance he would be permitted to withdraw his plea of guilty—a stipulation in which the prosecutor and court joined. Under these circumstances, the following applies: "Too much may not be done to purify and keep pure the administration of justice. If a defendant could not rely upon a covenant made with her by the head of the committee of the grand jury and the office of the district attorney, then indeed would our whole system of legal procedure be brought under the cloud of suspicion. It is far better that one woman go unpunished than that it be said that the officers of the law in charge of the prosecution of crimes may play fast and loose with their promises to defendants under indictment." (*People* v. *Schwarz* (1927) 201 Cal. 309, 314 [267 P. 71]. See also *People* v. *Wadkins, supra,* 63 Cal.2d 110, 113-114; *People* v. *Gilbert* (1944) 25 Cal.2d 422, 442-443 [154 P.2d 657]; and *People* v. *Caruso, supra,* 174 Cal.App.2d 624, 637-638; but *cf. In re Teran, supra,* 65 Cal.2d 523, 527-528; *People* v. *Strickland* (1966) 243 Cal.App.2d 196, 200 [52 Cal.Rptr. 215]; *People* v. *Jolke, supra,* 242 Cal.App.2d 132, 145; and *People* v. *Caruso, supra,* at p. 640.)

For some reason—whether through inadvertence or because of good cause which is not disclosed by the record—the defendant remained at the California Medical Facility at Corona until February 11, 1966 when he was physically returned to court. On February 3, 1966, the superintendent of the center directed a second letter to the court directing attention to the fact that no disposition of the matter had been made, and reiterating that the defendant was being referred back to the court under the provisions of section 3053 of the Welfare and Institutions Code because of his "extensive narcotic sales activities and excessive criminality." At the subsequent hearing to review defendant's return to court, the superintendent testified that the defendant's correctional counselor, under date of December 29, 1965, rendered the second report, approved by the supervising counselor, which has been set forth above. Thereafter, the superintendent again reviewed the defendant's file. He testified, "I returned him to court because of his excessive narcotic sales primarily, but

his excessive criminality did have a factor in it, as well.''

The defendant testified that he participated in the program for seven months and that he had anticipated being processed for release to a half-way house in March 1966.

 These further proceedings do not disclose that ''excessive criminality or any other relevant reason'' for concluding that defendant was ''not a fit subject for confinement or treatment'' (Welf. & Inst. Code, § 3053) arose subsequent to the date of his commitment. His return, because of facts and circumstances which antedated his admission, but which were subsequently revealed, should be considered a nonacceptance only, and should not be deemed a rejection because of a subsequent failure to cooperate. The plea was given and received because of mistaken belief on the part of all concerned that defendant was eligible for the program. Under these circumstances the court abused its discretion in refusing to permit the defendant to withdraw his plea of guilty.

The judgment is reversed and the case is remanded to the trial court with instructions to permit the defendant to withdraw his plea of guilty to violation of section 11500 of the Health and Safety Code, and to rearraign him for plea on the original indictment.

Molinari, P. J., and Elkington, J., concurred.

Respondent's petition for rehearing was denied February 7, 1968 and the following opinion was then rendered:

THE COURT.—As stated in the original opinion, this appeal was entertained on the particular circumstances of this case. Nothing in the opinion should be construed as approving the entertainment of an [noncertified] appeal from a guilty plea without the execution and filing of a certificate of probable cause as provided in Penal Code section 1237.5 on the bare fact of approval of a transcript. (It is obvious, however, that steps should be taken to prevent the expense of an unwarranted preparation of a transcript.) Nor does the opinion stand for the proposition that all matters which may be the subject of collateral attack can be considered on an appellate record which fails to set forth the full facts relating to such matters. In this case the salient facts upon which defendant's plea was predicated were conceded by the People.

The People's petition for rehearing is denied.

The petitions of the appellant and the respondent for a hearing by the Supreme Court were denied March 6, 1968. Sullivan, J., did not participate therein.