[L.A. No. 29711. In Bank. May 5, 1970.]

THE PEOPLE et al., Petitioners, v. THE SUPERIOR COURT OF
SAN DIEGO COUNTY, Respondent;
PETER ALEC SYVINSKI, Real Party in Interest.

## COUNSEL

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Mark L. Christiansen, Deputy Attorney General, James Don Keller, District Attorney, and Dick Hanscom, Deputy District Attorney, for Petitioners.

Bertram McLees, Jr., County Counsel, and Mary Gell, Deputy County Counsel, for Respondent.

James N. Pendleton, under appointment by the Supreme Court, for Real Party in Interest.

## OPINION

**BURKE, J.**—In December 1968, the real party in interest, Peter Alex Syvinski, was arrested for possession of marijuana. (Health & Saf. Code, § 11530.) At the time of his arrest, Syvinski was confined at a prison forestry camp operated by the Department of Corrections and was serving a prison sentence on an earlier charge of possession of marijuana. Syvinski was tried and convicted for the subsequent offense, but on April 23, 1969, prior

to sentencing him, respondent court suspended further criminal proceedings pending a determination, pursuant to Welfare and Institutions Code section 3051, whether Syvinski was addicted, or in imminent danger of becoming addicted to narcotics.[1] On May 16, after a hearing on the question, respondent court found that Syvinski was in danger of becoming addicted, and thereupon committed him to the custody of the Director of Corrections for confinement in the California Rehabilitation Center (hereinafter referred to as "CRC").

On July 28 the Superintendent of CRC, acting pursuant to Welfare and Institutions Code section 3053, evaluated Syvinski as not being a fit subject for treatment in the civil addict program, based upon his prior, uncompleted prison sentence, and referred him back to respondent court for resumption of criminal proceedings.[2] However, the court determined that CRC and the Department of Corrections had erroneously rejected Syvinski from the rehabilitation program, and on September 12 respondent ordered the sheriff to transfer Syvinski back to CRC "for a minimum of sixty days to determine whether or not he is suitable for treatment under the Cali-

---

[1]Section 3051 provides in pertinent part: "Upon conviction of a defendant for any crime in any superior court, if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics he shall adjourn the proceedings or suspend the imposition of the sentence and order the district attorney to file a petition for commitment of the defendant to the Director of Corrections for confinement in the narcotic detention, treatment and rehabilitation facility unless, in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section. . . .

"If, after a hearing, the judge finds that the defendant is a narcotic addict, or is by reason of the repeated use of narcotics in imminent danger of becoming addicted to narcotics, he shall make an order committing such person to the custody of the Director of Corrections for confinement in the facility until such time as he is discharged pursuant to Article 5 of this chapter, except as this chapter permits earlier discharge. . . ."

Section 3050 contains a similar commitment procedure for persons convicted of any crime in a municipal or justice court.

[2]Section 3053 prior to its amendment in 1969 provided: "If at any time after 60 days following receipt at the facility of a person committed pursuant to this article, the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such narcotics detention, treatment and rehabilitation facility, he shall return the person to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted." The minimum 60-day evaluation period was deleted by amendment effective November 10, 1969 (Stats. 1969, ch. 238, § 1). The record does not disclose whether Syvinski actually remained at CRC during the minimum 60-day period required by former section 3053. Although premature evaluation by CRC may constitute grounds for recommitment (see *In re Swearingen,* 64 Cal.2d 519, 521 [50 Cal.Rptr. 787, 413 P.2d 675]; *People* v. *Gallegos,* 245 Cal. App.2d 53 [53 Cal.Rptr. 663]), we need not reach this question if, as a matter of law, Syvinski was ineligible for confinement at CRC by reason of his status as a prisoner.

fornia Rehabilitation Center program." The court also ordered CRC to prepare a full psychiatric study of Syvinski prior to his removal from CRC. The basis for the court's ruling was disclosed during argument upon a subsequent motion to vacate the September 12 order, which motion was denied by order of October 28. The court reasoned that it was improper to reject Syvinski solely because of his status as a prisoner serving a prior sentence; that CRC's determination should have been based upon its appraisal of Syvinski's fitness and suitability for treatment ʲand rehabilitation.

Following the court's orders of September 12 and October 28, Syvinski was returned to CRC for further study and evaluation. Although the record indicates that CRC has completed its reevaluation of Syvnski and has recommended that he be returned to prison rather than undergo treatment, apparently Syvinski still remains at CRC awaiting the resumption of criminal proceedings. Since counsel for respondent has indicated that the court may not accept CRC's latest evaluation and therefore may order additional CRC proceedings to determine Syvinski's suitability for treatment, the case has not yet become moot, and we may properly consider the question whether the court had jurisdiction to commit Syvinski to CRC.

The People seek mandate to vacate respondent court's orders of September 12 and October 28 and to compel the immediate resumption of criminal proceedings against Syvinski. We have concluded that these orders were beyond the court's jurisdiction, in that there is no statutory or other procedure for committing a prisoner to CRC who at the time of commitment is in the custody and under the supervision and control of the Adult Authority pursuant to a valid prior commitment.

 Section 3051 of the Welfare and Institutions Code, which provides for the commitment of persons determined to be addicted or in danger of becoming addicted to narcotics, does not authorize the commitment of persons who are currently serving prison sentences. (*People* v. *Ballin,* 66 Cal.2d 80, 82 [56 Cal.Rptr. 893, 424 P.2d 333]; *In re Teran,* 65 Cal.2d 523, 525, fn. 3 [55 Cal.Rptr. 259, 421 P.2d 107]; see *People* v. *Victor,* 62 Cal.2d 280, 293-296 [42 Cal.Rptr. 199, 398 P.2d 391].) By its terms, section 3051 is limited to persons who have been convicted but not yet sentenced to prison.

As stated in *People* v. *Victor, supra,* 62 Cal.2d 280, 294, involving Penal Code section 6450, the predecessor to Welfare and Institutions Code section 3050 (commitment upon conviction in a municipal or justice court), ineligibility of persons serving prison sentences "is consonant with the purpose of the statute to provide essentially civil confinement for treatment of narcotic addicts . . . . It follows from the face of the statute that

after defendant had been sentenced, section 6450 was no longer available to support a commitment to the narcotic addict rehabilitation program."

*Victor* pointed out that if a commitment were permitted in such cases, either the commitment would have to stand by until defendant had served his prison sentence, or else that sentence would have to be suspended; however, neither alternative is provided for by statute. (62 Cal.2d at p. 295.)[3]

■ Parolees, as distinguished from prisoners who remain in custody in prison, are eligible for commitment to the rehabilitation program. (*People* v. *Rummel,* 64 Cal.2d 515, 517-518 [50 Cal.Rptr. 785, 413 P.2d 673]; *In re Swearingen, supra,* 64 Cal.2d 519, 521-522; *In re Teran, supra,* 65 Cal.2d 523, 525-527; *People* v. *Ballin, supra,* 66 Cal.2d 80, 82.) However, under these cases once his parole has been revoked by the Adult Authority, a defendant becomes ineligible for commitment and must be returned to prison.

As stated in *People* v. *Ballin, supra,* 66 Cal.2d 80, 82, "A defendant's parole status does not make him ineligible for treatment at the rehabilitation center. [Citation.] Therefore, the trial court, in its discretion, had the power to commit defendant to the rehabilitation center. [Par.] However, the Adult Authority's power to revoke parole takes precedence over any commitment to the rehabilitation center. [Citation.] *Furthermore, a person who is serving a prison term is ineligible for treatment at the rehabilitation center, there being no provision in the law to transfer such a person to the rehabilitation center.* [Citation.] [Par.] As a result, after the Adult Authority revoked defendant's parole, and it became necessary to return him to prison, he became ineligible for treatment at the rehabilitation center." (Italics added.)

Aside from the lack of statutory authority for the commitment of persons serving prison sentences, there is a sound practical reason why such persons should not be eligible for commitment. "The concept of 'fitness for commitment' [Welf. & Inst. Code, § 3051] flows from the nature of the program itself and the conditions under which it must operate to maximize its chances of success. It must retain its nonpenal character, and those who are receiving treatment must be able to function effectively in a minimum security setting, cooperate with fellow-patients and counselors in group therapy and work programs, and assume a certain degree of responsibility and self-reliance. Not all criminal defendants, unfortunately, exhibit these

---

[3]*Victor* also held that section 3100 et seq. of the Welfare and Institutions Code (formerly Pen. Code, § 6500 et seq.), pertaining to the involuntary commitment of persons not convicted of a crime, do not authorize the commitment of persons who are serving prison sentences. (62 Cal.2d at pp. 294-295.)

qualities." (Belton, *Civil Commitment of Narcotics Addicts in California: A Case History of Statutory Construction,* 19 Hastings L.J. 603, 632-633; see *People* v. *Sateriale,* 247 Cal.App.2d 314, 317 [55 Cal.Rptr. 500]; *People* v. *Zapata,* 220 Cal.App.2d 903, 913 [34 Cal.Rptr. 171]; cf. Welf. & Inst. Code, § 3052.) █ It is apparent that unlike a parolee, who has demonstrated an ability to function without maximum supervision, a person serving a prison sentence for a prior criminal offense cannot be placed in a "minimum security setting" without substantial risk. The initial determination whether that risk should be taken must be left to the sound discretion of the Adult Authority in exercising its parole function.

█ Counsel for respondent suggests that since Syvinski's offenses involved possession of marijuana, the facilities of CRC should be available to him. However, the applicable statutory provisions disclose no intent to create any exception in favor of prisoners serving sentences for marijuana crimes. On the contrary, the term "narcotic addict," as used in the civil commitment act, refers to a person who is addicted to the unlawful use of any "narcotic" (as defined in div. 10 of the Health & Saf. Code) *except marijuana.* (Welf. & Inst. Code, § 3009.)

Moreover, as pointed out in *People* v. *Victor, supra,* 62 Cal.2d 280, 297, "[T]he Legislature has authorized treatment for narcotics addiction in city or county jails and the state prison system . . . ." (See Dept. of Corr. Admin. Bull. No. 68/39, dated November 18, 1969.) Therefore, if Syvinski in fact is an addict or in danger of becoming one, certain rehabilitative facilities may be available within the prison system.

█ Respondent also suggests that CRC's allegedly unjustified failure to evaluate Syvinski as fit for commitment may have influenced the Adult Authority in its decision to deny him parole. The record indicates that Syvinski had a parole hearing in· August 1969, shortly after CRC's initial evaluation of July 28. However, there is no indication in the record that the decision to deny parole was based upon CRC's negative evaluation rather than upon Syvinski's conviction of a criminal offense while serving a prior prison sentence. █ As stated in *In re Schoengarth,* 66 Cal.2d 295, 300 [57 Cal.Rptr. 600, 425 P.2d 200], "the decision to grant or deny parole is committed entirely to the judgment and discretion of the Adult Authority [citation]." █ On the record in the instant case, there is no basis for holding that the Adult Authority abused its discretion in denying parole to Syvinski. (See *People* v. *Brothers,* 270 Cal.App.2d 84, 87-89 [75 Cal.Rptr. 611]; *People* v. *Miller,* 253 Cal.App.2d 224, 226-228 [61 Cal.Rptr. 155].) Of course, if the Adult Authority subsequently decided to grant a parole to Syvinski, he would thereupon be eligible for commitment to CRC, upon a proper showing that he remained in danger

of becoming addicted to narcotics. (See *People* v. *Armendariz,* 253 Cal.App.2d 33, 37 [60 Cal.Rptr. 796]; cf. *People* v. *Victor, supra,* 62 Cal.2d at p. 295, fn. 11.)

█ We conclude that, by reason of his status as a prisoner, Syvinski was ineligible for commitment to CRC, and that "The Director of Corrections therefore had no alternative but to take the action which he did" (*People* v. *Ballin, supra,* 66 Cal.2d 80, 83), in evaluating Syvinski as not being a fit subject for CRC treatment. Consequently, respondent's orders of September 12 and October 28 were beyond its jurisdiction and void.

Let a peremptory writ of mandate issue ordering respondent to vacate its orders of September 12 and October 28, 1969, committing Syvinski to CRC, and to reinstate criminal proceedings against him.

Mosk, Acting C. J., McComb, J., Peters, J., Tobriner, J., Sullivan, J., and Ford, J.,* concurred.

*Assigned by the Acting Chairman of the Judicial Council.