[Crim. No. 9601.   In Bank.   May 3, 1966.]

In re AMBROCIO MEDINA RASCON on Habeas Corpus.

Ambrocio Medina Rascon, in pro. per., and Gilbert F. Nelson, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, John L. Giordano and Edward A. Hinz, Jr., Deputy Attorneys General, for Respondent.

McCOMB, J.—On March 19, 1963, by an information filed in the Superior Court of Los Angeles County, petitioner was charged with the crime of violating section 11500 of the Health and Safety Code (possession of heroin). As amended, the information alleged three prior felony convictions of that section.

On August 14, 1963, in department 115, petitioner was convicted of possession of heroin, as charged in the information. The trial court found one of the alleged prior convictions not true, but the other two true.

On September 11, 1963, a probation officer's report on petitioner's case was filed.

On September 13, 1963, on the basis of the probation officer's report, the court adjourned the proceedings and ordered the sheriff to file a petition in department 95 of the Los Angeles Superior Court pursuant to section 6451 of the Penal Code (now Welf. & Inst. Code, § 3051) for possible narcotic commitment.

On September 24, 1963, in department 95 petitioner was found ineligible for the narcotic rehabilitation program on the ground that he was a parolee. The petition for commitment was dismissed, and petitioner was remanded to department 115.

On September 27, 1963, criminal proceedings were resumed in department 115, and the court denied probation and sentenced petitioner to the state prison for the term prescribed by law.[1]

On May 29, 1964, the public defender of Los Angeles County filed a petition for a writ of error *coram nobis* on behalf of petitioner, alleging that petitioner had been found ineligible for the narcotic rehabilitation program solely on the ground that he was a parolee and that he had been sentenced to state prison under the erroneous belief that there was no alternative.

On June 22, 1964, petitioner was returned from state prison for hearing on his petition for a writ of error *coram nobis.*

At that time the trial judge stated that he felt it would be in the public interest for petitioner to be sent to the rehabilitation center for treatment.[2] He said that after the date of sentence he had learned that while it was the policy of the Department of Corrections to reject persons committed to the rehabilitation center for treatment if they were on parole, there were exceptions to this policy, and that procedures were open to the court if the court desired to put the matter before the Director of Corrections.

After referring to language of this court in *People* v. *Ortiz,* 61 Cal.2d 249, 254-255 [3] [37 Cal.Rptr. 891, 391 P.2d 163], in

[1]Section 11500 of the Health and Safety Code provides for a minimum term of five years if the person has had one prior felony conviction and a minimum of 15 years if he has had two or more prior felony convictions.

[2]The trial judge stated: ''It was the feeling of the Court that the defendant was addicted to the use of narcotics and that it would be in the public interest that he would be sent to the Narcotic Rehabilitation Center, under the provisions of Section 6451 of the Penal Code, instead of being sent to State Prison. This conclusion we had reached because of the fact that his Probation Report showed that he was addicted to the use of narcotics. He was only 27 years old, according to the probation report, and unlike many narcotic addicts, he did not have a long, long criminal record.''

which we said that a trial court's discretion whether to institute narcotic commitment proceedings should be exercised with a view to implementing, rather than possibly frustrating, the strong legislative policy disclosed by the enactments creating and governing the narcotic rehabilitation program, the trial judge said, "... I feel the [trial] Court was in error in not exercising its discretion to take the practical steps that may have resulted in placing the matter before the Adult Authority, by writing a letter and saying 'here is an exceptional case....' "

The judge thereupon announced that he would make inquiries to determine if petitioner would be accepted for treatment notwithstanding his parole status, adding that if it was indicated petitioner would be accepted, the matter would be presented to the district attorney under section 6451 of the Penal Code.[3]

The court then granted the writ of error *coram nobis,* vacated and set aside the judgment entered on September 27, 1963, and continued the matter to July 28, 1964.

On June 24, 1964, the trial judge wrote letters to Roland W. Wood, Superintendent of the California Rehabilitation Center, and the Chairman of the Adult Authority.

On July 10, 1964, Mr. Wood replied, stating his belief that petitioner was unfit for treatment in the rehabilitation program "based on the issue of excessive criminality, coupled with the probable lack of favorable response to treatment."

In support of his conclusion, Mr. Wood pointed out that petitioner had received a bad conduct discharge from the Marine Corps in 1954 prior to the time he began using heroin;

---

[3]Section 6452 of the Penal Code (now Welf. & Inst. Code, § 3052) made the commitment provisions inapplicable to persons who had been convicted of certain enumerated felonies (including a violation of section 11500 of the Health and Safety Code if the minimum term was more than five years).

Section 6451 of the Penal Code, however, as amended in 1963 (effective September 20, 1963, which was after the date on which petitioner was found guilty but before the date on which the petition for commitment was dismissed), authorized the trial judge to request the district attorney to investigate the facts relevant to the advisability of commitment, and provided, "In unusual cases, wherein the interest of justice would best be served, the judge may, with the concurrence of the district attorney and defendant, order commitment notwithstanding Section 6452." (Stats. 1963, ch. 1704, p. 3349.)

Accordingly, as pointed out by the trial judge, even under a finding that petitioner had two prior felony convictions, thus requiring a 15-year minimum term for the August 14, 1963, conviction, it would have been possible to commit petitioner to the rehabilitation center if the district attorney and the judge had both concluded that such action was warranted by the facts of the case.

had been convicted of grand theft in 1956, for which he was sentenced to a year in the county jail, subsequently effecting an escape from the jail; and had shown during treatment given to him while he was an inmate of the state prison that he was unlikely to profit from exposure to the rehabilitation center.

The Adult Authority replied by two letters. In one, dated July 15, 1964, it was indicated that the judge's letter was being placed on the agenda for a discussion by the full board at the executive meeting scheduled for July 17, 1964. In the other, dated July 24, 1964, after giving certain general information on the handling of commitment cases, the Adult Authority advised that prior to the proposed discussion the authority had been furnished a copy of Mr. Wood's letter to the judge and that, as a result, it was felt there was no need for further discussion.

On July 28, 1964, further proceedings were had in department 115, at which time the trial judge read in full the letters from Mr. Wood and the Adult Authority and said that in view of Mr. Wood's statements and the Adult Authority's decision that petitioner would not be accepted for treatment at the rehabilitation center, he was not going to request the district attorney to investigate the facts and concur in a commitment notwithstanding section 6452 of the Penal Code, as under the circumstances a commitment would be an idle act.

Following a discussion about the possibility of having one of the priors stricken, so that petitioner would be subject to a minimum term of only five years instead of fifteen, the court continued the case to August 7, 1964.

On August 7, 1964, the court found that petitioner had been guilty of only one prior felony conviction[4] and sentenced him to the term prescribed by law.

On November 30, 1965, petitioner filed the present petition

---

[4]The trial judge stated: "Now, as to the first offense, that being 11500, Health & Safety Code, alleged to have occurred on or about the 16th day of January, 1956, it appears that offense was a misdemeanor. He was sentenced to 180 days in the County Jail, 90 days suspended, so it was a misdemeanor instead of a felony as alleged, so we will find that that is untrue.

"Now, as to the other offenses alleged in violation of Section 11500 of the Health & Safety Code . . . it appears from the record that the defendant was arrested for a sale of narcotics. He had apparently sold some narcotic, so they got a warrant for his arrest, and when they arrested him they found he had some narcotics in his possession at the time, so that they actually filed two charges against him. And, because the sale and the arrest were not simultaneously, technically, they did not have just one offense, but I am going to find there is only one prior under those circumstances."

for a writ of habeas corpus, alleging that he was denied admission to the rehabilitation center because the Director of Corrections had concluded his parole status rendered him ineligible; that the director abused his discretion in reaching such a conclusion; and that, as a result, petitioner's constitutional rights have been violated. As has been indicated, however, it was the trial court's discretion, rather than that of the Director of Corrections, that resulted in the fact that commitment proceedings were not carried out.

If the trial court had committed petitioner to the rehabilitation center the Director of Corrections, by the terms of section 6453 of the Penal Code (now Welf. & Inst. Code, § 3053),[5] would have been required to hold the petitioner at the center for a period of 60 days and at the end of that time make a determination whether petitioner was a fit subject for the program.

The director would have had no right to reject petitioner as an unfit subject solely because of his parole status.[6] (*In re Swearingen, ante,* pp. 519, 521-522 [50 Cal.Rptr. 787, 413 P.2d 675]; *People* v. *Rummel, ante,* pp. 515, 517 [50 Cal.Rptr. 785, 413 P.2d 673].) However, the statute authorizes him to reject a person "because of excessive criminality or for other relevant reason."

In this case, no doubt for the purpose of assisting it in the exercise of its discretion, the trial court saw fit preliminarily to ascertain the views of both the superintendent of the rehabilitation center and of the Adult Authority before arriving at its decision whether or not to carry out commitment proceedings.

In the superintendent's reply of July 10, 1964, the latter stated the principal factors leading to his conclusion that the petitioner would not be accepted at the rehabilitation center as

---

[5]Section 6453 of the Penal Code provided in part: "If at any time after 60 days following receipt of a person at the facility [rehabilitation center], the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such . . . rehabilitation facility, he shall return the person to the court in which the case originated for . . . further proceedings on the criminal charges . . . ." (Stats. 1963, ch. 1706, p. 3355.)

[6]Apparently, when the rehabilitation program was started in 1961, the facilities were limited, and it was the practice not to accept persons under parole for treatment, except in a few cases where prior approval of the Director of Corrections had been obtained. In August 1964, this broad policy of exclusion of persons on parole for a prior offense was altered, and the Department of Corrections determined that all persons committed to the rehabilitation center would be evaluated during the 60-day period established by the code.

follows: "1. Mr. Rascon experienced a bad conduct discharge from the Marine Corps in 1954. This fact apparently pre-dates his heroin usage and tends to indicate the existence of problems leading to non-narcotics delinquent behavior prior to the onset of narcotics use. This, of course, is not atypical of many in our population but is nonetheless one of the factors considered.

"2. It is noted that Mr. Rascon was, in 1956, convicted of grand theft, sentenced to a year in County Jail and during the same year apparently escaped. Once again, the factor of non-narcotic criminal involvement coupled with the factor of escape tends to militate against commitment to this institution. I feel this is true even granting that the grand theft was probably for purposes of supporting a habit.

"3. One of the key issues in the decision regarding non-suitablility is the fact that Mr. Rascon has previously been committed to the Department of Corrections under circumstances in which his addiction pattern was known and furthermore he was exposed to the specialized treatment approach of the Narcotics Treatment Control Project both on the institutional phase and in parole community supervision. This special experimental project has many elements in common with our own approach and although we are certainly not equating the two programs, these facts once again tend to indicate that Mr. Rascon is unlikely to genuinely profit from exposure to the California Rehabilitation Center.

"4. Taking these facts, coupled with Mr. Rascon's apparent lack of motivation for change (as revealed on page 5 of the Probation Officer's Report) renders him, in my judgment, a most unlikely candidate for the California Rehabilitation Center."

■ *Question:* *Did the trial court abuse its discretion in not conducting proceedings to determine if Rascon was addicted to narcotics or in imminent danger thereof?*

*No.* Penal Code section 6451, as it read at the time of the 1964 proceedings, provided: "Upon conviction of a defendant for any crime in any superior court, if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics, he shall adjourn the proceedings or suspend the imposition of the sentence and conduct proceedings to ascertain if such person is addicted to narcotics or in imminent danger thereof unless in the opinion of the judge the defendant's record and probation report indicate such a pat-

tern of criminality that he does not constitute a fit subject for commitment under this section. . . ." In the light of the information received from the Adult Authority and the superintendent of the rehabilitation center the judge's action in not carrying out commitment proceedings was proper. (*People* v. *Corona*, 238 Cal.App.2d 914, 922-923 [48 Cal.Rptr. 193].)

The order to show cause is discharged and the petition denied.

Traynor, C. J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.