[Crim. No. 12667. Second Dist., Div. Five. July 31, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT CANO ARMENDARIZ, Defendant and Appellant.

Bertram H. Ross, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—On May 26, 1964, defendant pleaded guilty to an information charging him with one sale of heroin. (Health & Saf. Code, § 11501.) The information charged him with two prior narcotic offenses. On the People's motion (Health & Saf. Code, § 11718) one of the two priors was stricken. The minimum sentence which defendant was to serve was thus reduced from 15 to 10 years. A probation report was ordered.

The probation report contained the following evaluation: "The defendant was cooperative with probation officer throughout the probation investigation. He is intelligent and articulate and seems sincere in his desire to overcome his narcotics problem. The difficulty in the present case, however, has to do with the fact that the defendant is presently on parole for narcotics and that his minimum sentence would appear to render him ineligible for the narcotics program. Probation officer believes that this is unfortunate because the defendant, it is felt, has the capacity to respond to the treatment program . . ."

When the defendant appeared for sentencing on August 19, 1964, it appeared that the court had made extensive inquiries with the superintendent of the California Rehabilitation Center at Corona and the chairman of the Adult Authority to determine whether or not defendant would be acceptable to the program. It appeared from the correspondence that the court's correspondents thought that defendant would not be acceptable for various reasons. Among those reasons were the revocation of defendant's parole from an earlier conviction in 1956 and his ineligibility under the provisions of section 3052 of the Welfare and Institutions Code in view of the 10-year minimum sentence commanded by section 11501 of the Health and Safety Code.

While the court still appeared to be sympathetic to the idea of instituting commitment proceedings, it felt that defendant's status as a parole violator precluded the court from asking the district attorney to concur that defendant's case was "unusual."[1]

---

[1]Section 3051 of the Welfare and Institutions Code provides, *inter alia*, as follows: "In unusual cases, wherein the interest of justice would best

It does not expressly appear from the proceedings of August 19, 1964, that the court felt that before such concurrence of the district attorney could be obtained, it would be necessary for the district attorney to make a motion under section 11718 of the Health and Safety Code[2] so that, by striking the other prior narcotics conviction, the minimum term would be reduced to five years.

Defendant was then sentenced. The sentence was ordered to run concurrently "with any other time defendant may have to serve."

On March 8, 1966, defendant filed a petition for a writ of error *coram nobis* in the trial court. The burden of the petition was that the trial court had erred in believing that it had no discretion to start narcotic commitment proceedings. The court appointed counsel to represent defendant at a hearing on the writ.

The hearing was held on May 16, 1966. We note that very shortly before that date, on May 3, 1966, the Supreme Court decided *People* v. *Rummel,* 64 Cal.2d 515 [50 Cal.Rptr. 785, 413 P.2d 673], *In re Swearingen,* 64 Cal.2d 519 [50 Cal.Rptr. 787, 413 P.2d 675], and *In re Rascon,* 64 Cal.2d 523 [50 Cal.Rptr. 790, 413 P.2d 678].  ■  These cases, particularly *Rummel,* held that: (1) the mere fact that a person was a parolee did not make him ineligible for the program; and (2) commitment to the program did not restrict the right of the Adult Authority to revoke his parole. We cannot be certain whether or not the court and the parties were aware of these decisions at the time of the hearing, since no reference to them was made by anyone. Nor can we agree with defendant's present counsel that it affirmatively appears that the trial court had not anticipated *Rummel* at the time of the sentencing in 1964.

It appeared, however, at the hearing on the *coram nobis* petition that the trial court was then mistaken on another legal point and it is extremely probable that it labored under the same mistake in 1964. Reviewing what had gone on before,

---

be served, the judge may, with the concurrence of the district attorney and defendant, order commitment notwithstanding Section 3052."

[2]Section 11718 of the Health and Safety Code reads as follows: "In any criminal proceeding for violation of any provision of this division no allegation of fact which, if admitted or found to be true, would change the penalty for the offense charged from what the penalty would be if such fact were not alleged and admitted or proved to be true may be dismissed by the court or stricken from the accusatory pleading except upon motion of the district attorney."

the court said, among other things: "I started to explore that matter and there is some discussion about that, but in making that exploration, I got the views of Mr. Wood from the Rehabilitation Center and after getting these views and reviewing the report of the probation officer and all of the factors, I came to the conclusion that *I didn't feel that I could request the District Attorney to strike this other prior. The situation at that time was and still is that the District Attorney can join in striking the priors, the Court cannot strike the prior without the concurrence or the approval of the District Attorney and the policy of the District Attorney's office has been to exercise his discretion, the discretion of the Office, but with a very great deal of consideration to the views of the Judge handling the case. I stated as follows: I couldn't do that without the concurrence of the District Attorney and I am not going to ask the District Attorney to do that. So at that time we did not have the concurrence of the District Attorney on a striking of the prior.*

"Now in effect, this matter has been put up to the District Attorney again to see what the answer of that Office would be *on the striking of the prior* and we have just heard it, so that the Court at this time has no power to make a commitment to the Narcotic Rehabilitation Center. I think the record also indicates my own feeling at the time of this sentence that this was not an unusual case wherein the interest of justice would best be served by ordering the commitment and that is my view now.

"The defendant's past record together with the large amount of heroin that he had in his possession indicates that he comes within the category of a large dealer and not just one of these unfortunate persons who have an addiction and are trafficking in a drug merely to supply their own wants.

"His motion for a Writ of Error Coram Nobis is denied." (Italics added.)

■ From the above it appears that the court was acting under a misapprehension, namely that in order for the district attorney to concur in a finding that defendant's was an "unusual case" so that he would be eligible for the program in spite of the 10-year minimum term, it would have been necessary for the district attorney to exercise his power under section 11718 of the Health and Safety Code to move to strike the prior.

There is nothing in the law to support this view. In fact, if by striking the second prior the minimum sentence of defendant had been reduced to five years (Health & Saf. Code,

§ 11501), section 3052 would have become inapplicable.[3] A district attorney, in the exercise of his discretion, may very well wish to concur in a finding under section 3051, which would enable the defendant to be committed to the program, without wanting to reduce the minimum sentence the defendant would have to serve after discharge from the program, if the original charges are not dismissed. (Welf. & Inst. Code, § 3200.)

The court's express reluctance to ask the district attorney to concur in a finding under section 3051, as well as the court's own feeling that defendant's was not an unusual case "wherein the interest of justice would best be served" by a commitment to the program, may well have been based on the misconception that before defendant could be committed the minimum term would have to be reduced to five years.

Under the circumstances we believe that the wisest course to pursue is to reverse the order denying the writ of *coram nobis* so that the trial court will have yet another opportunity to consider the advisability of starting commitment proceedings. Nothing in this opinion is in any way intended to hint at the direction in which the trial court should exercise its discretion in the light of the facts and the law as they may appear to be at the next hearing. We have said nothing about the matter of parole in this opinion. It appears that defendant's parole from his earlier conviction had been revoked at the time of the present offense. If at the time of the hearing defendant is still in actual custody because of the 1956 conviction and if the Adult Authority is not disposed to grant parole, there is indeed very little the court will be able to do for him. (*People v. Rummel, supra.*)

The order is reversed.

Hufstedler, J., and Stephens, J., concurred.

[3]In *People* v. *Ibarra*, 60 Cal.2d 460, 467 [34 Cal.Rptr. 863, 386 P.2d 487] the Supreme Court said: "Defendant has suffered no previous conviction that carried a minimum sentence of more than five years, and his present conviction, with only one prior conviction charged, carries a minimum sentence of five years. 'Five years' is less than 'more than five years'. (See *People* v. *Wallace*, 59 Cal.2d 548, 553 [30 Cal.Rptr. 449, 381 P.2d 185].)"

The court's misunderstanding may be due to the following sentence in *Ibarra*: "We are not persuaded that district attorneys otherwise inclined to dismiss prior convictions will refrain from so doing to render defendants ineligible for the rehabilitation program." It is evident that in *Ibarra*, decided in November 1963, the Supreme Court did not take into consideration the 1963 amendment to section 6451 of the Penal Code, now section 3051 of the Welfare and Institutions Code, which allowed the court and the district attorney to make the program available in unusual cases to denfendants who were otherwise not eligible.