[Crim. No. 8869. First Dist., Div. One. Apr. 12, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM JOHN HARRIS, Defendant and Appellant.

390

**COUNSEL**

Molly H. Minudri for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Edward P. O'Brien and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**SIMS, J.**—Defendant was sentenced to state prison following his plea of guilty to possession of heroin in violation of section 11500 of the Health and Safety Code, with an admitted prior conviction of the same offense, and a second admitted prior conviction of robbery in violation of section 211 of the Penal Code. By this appeal he seeks review of the denial of his motion to be committed to the narcotic rehabilitation program under the provisions of section 3051 of the Welfare and Institutions Code.[1] He contends: (1) that the provisions of section 3051 which require the concurrence of the district attorney and the defendant before the judge may order a commitment in unusual cases constitute an unconstitutional invasion of judicial power by an executive officer and a lay person; (2) that the director of the California Rehabilitation Center acted unlawfully and abused his discretion in advising the court that he would refuse to accept the commitment of the defendant to the center; and (3) that section 3052 of the Welfare and Institutions Code[2] is unconstitutional because it denies equal protection of the law to those excluded from the rehabilitation program by its terms. These contentions are examined and found without merit. The trial court properly denied the defendant's motion for commitment. The judgment must be affirmed.

### I

Attention is first directed to the provisions of section 3052 (fn. 2 above) because if it is unconstitutional, there would be no occasion for the court

---

[1]Welfare and Institutions Code section 3051 provides in pertinent part: "If, after a hearing, the judge finds that the defendant is a narcotic addict, or is by reason of the repeated use of narcotics in imminent danger of becoming addicted to narcotics, he shall make an order committing such person to the custody of the Director of Corrections for confinement in the facility until such time as he is discharged pursuant to Article 5 of this chapter, except as this chapter permits earlier discharge. In any case to which Section 3052 applies, the judge may request the district attorney to investigate the facts relevant to the advisability of commitment pursuant to this section. In unusual cases, wherein the interest of justice would best be served, the judge may, with the concurrence of the district attorney and defendant, order commitment notwithstanding Section 3052. . . ."

[2]Welfare and Institutions Code section 3052 provides: "Sections 3050 and 3051 shall not apply to persons convicted of, or who have been previously convicted of murder, assault with intent to commit murder, attempt to commit murder, kidnaping, robbery, burglary in the first degree, mayhem, a violation of Section 245 or a violation of any provision of Chapter 1 (commencing with Section 261) of Title 9 of Part 1 of the Penal Code (but excepting subdivision 1 of Section 261) any felonies involving bodily harm or attempt to inflict bodily harm or any offense set forth in Article 1 (commencing with Section 11500) or 2 (commencing with Section 11530) of Chapter 5 of Division 10 of the Health and Safety Code, or in Article 4 (commencing with Section 11710) of Chapter 7 of such Division 10 for which the minimum term prescribed by law is more than five years in state prison."

to consider the case under those provisions of section 3051 which the defendant attacks in this appeal. The defendant contends that the section denies equal protection of the laws under the Fourteenth Amendment of the United States Constitution, and under provisions of the Constitution of the State of California. (See art. I, §§ 11 and 21; and former art. IV, § 25 [repealed Nov. 8, 1966]; and cf. art. IV, § 16; *Accounting Corp.* v. *St. Bd. of Accountancy* (1949) 34 Cal.2d 186, 191 [208 P.2d 984]; *Takahashi* v. *Fish & Game Com.* (1947) 30 Cal.2d 719, 726-731 [185 P.2d 805] [revd. in 334 U.S. 410 [92 L.Ed. 1478, 68 S.Ct. 1138]]; *Del Mar Canning Co.* v. *Payne* (1946) 29 Cal.2d 380, 382-383 [175 P.2d 231]; and 11 Cal.Jur.2d, Constitutional Law, §§ 258-260, pp. 695-698.) He asserts that the state, having undertaken a program for the treatment and rehabilitation of drug addicts and the suppression of drug abuse (see Welf. & Inst. Code, § 3000[3]), cannot exclude an addict because he has been convicted, or has been previously convicted of certain crimes. He attacks both the provisions which exclude narcotic violators who are subject to punishment for a minimum term in excess of five years, and the provisions which exclude those convicted of any of the enumerated crimes of violence.

■ Since as a second offender under the provisions of section 11500 of the Health and Safety Code, the defendant is subject to a minimum term of only five years, he cannot be denied treatment under that proviso. (See *People* v. *Wallace* (1963) 59 Cal.2d 548, 553 [30 Cal.Rptr. 449, 381 P.2d 185].) He, therefore, is not entitled to attack the constitutionality of those provisions, which apparently seek to distinguish between addicts who are repeated offenders of the narcotic laws, and those who are not. It is, therefore, unnecessary to dwell upon the reasonableness of such a classification.

■ The principles governing the application of the equal protection clause were laid down in *Whittaker* v. *Superior Court* (1968) 68 Cal.2d 357 [66 Cal.Rptr. 710, 438 P.2d 358], as follows: "It is clear . . . that neither the equal protection clause of the United States Constitution, nor those provisions of the state Constitution which embody the principle of

[3]Welfare and Institutions Code section 3000 provides in part: "It is the intent of the Legislature that persons addicted to narcotics, or who by reason of repeated use of narcotics are in imminent danger of becoming addicted, shall be treated for such condition and its underlying causes, and that such treatment shall be carried out for nonpunitive purposes not only for the protection of the addict, or person in imminent danger of addiction, against himself, but also for the prevention of contamination of others and the protection of the public. Persons committed to the program provided for in this chapter who are uncooperative with efforts to treat them or are otherwise unresponsive to treatment nevertheless should be kept in the program for purposes of control. . . ."

equality before the law, proscribe legislative classification per se. On the contrary such constitutional provisions, which in general assure that persons in like circumstances be given equal protection and security in the enjoyment of their rights (see 3 Witkin, Summary of Cal. Law (7th ed. 1960) Constitutional Law, § 125, p. 1930), permit classification 'which has a substantial relation to a legitimate object to be accomplished. . . .' (*Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 833 . . . .) So long as such a classification 'does not permit one to exercise the privilege while refusing it to another of like qualifications, under like conditions and circumstances, it is unobjectionable upon this ground.' (*Watson* v. *Division of Motor Vehicles* (1931) 212 Cal. 279, 284 . . . .) Finally, it is to be observed that a classification based on legislative experience is presumed valid and will not be rejected unless plainly arbitrary. 'Statutory discrimination between classes which are in fact different must be presumed to be relevant to a permissible legislative purpose, and will not be deemed to be a denial of equal protection if any state of facts could be conceived which would support it.' (*Asbury Hospital* v. *Cass County* (1945) 326 U.S. 207, 215 . . . .)" (68 Cal.2d at pp. 367-368, fn. omitted.)

■ Defendant urges that since the object is to regulate drug addiction it is unreasonable to exclude a robber or a burglar who may steal to support his habit. He concludes "there is no reasonable basis for including drug addicts with non-violent records in the program and excluding drug addicts with records of violence."

This approach fails to recognize that the purpose of the rehabilitation program is to provide for the treatment and control of narcotic addicts in a nonpenal and, where possible, a noncustodial setting. (See *People* v. *Superior Court* (1970) 2 Cal.3d 527, 532-533 [86 Cal.Rptr. 83, 468 P.2d 211]; *In re De La O* (1963) 59 Cal.2d 128, 147 [28 Cal.Rptr. 489, 378 P.2d 793] [cert. den. 374 U.S. 856 [10 L.Ed.2d 1076, 83 S.Ct. 1927]]; and *People* v. *Zapata* (1963) 220 Cal.App.2d 903, 913 [3 Cal.Rptr. 171] [cert. den. 377 U.S. 406 [12 L.Ed.2d 495, 84 S.Ct. 1633]].) It was not unreasonable for the Legislature, in an attempt to stress the nonpunitive nature of the program, to exclude, because of a rational fear of custodial problems, addicts with a history of a propensity for committing crimes of violence. (See Belton, *Civil Commitment of Narcotic Addicts in California: A Case History of Statutory Construction* (1968) 19 Hastings L.J. 603, 637 and 644.)

Defendant's argument is a rational polemic for the furnishing of treatment to those who are excluded from the program under review in another setting. It does not, however, demonstrate that the Legislature vio-

lated the constitutional rights of those whom it rationally excluded in order to facilitate the success of the program for others.

## II

Section 3051 (see fn. 1 above) provides in part, "In any case to which Section 3052 applies, the judge may request the district attorney to investigate the facts relevant to the advisability of commitment pursuant to this section. In unusual cases, wherein the interest of justice would best be served, the judge may, with the concurrence of the district attorney and defendant, order commitment notwithstanding Section 3052." Defendant asserts that the latter provision is unconstitutional in that it provides for invasion of the judicial process by the district attorney, who is an administrative officer, and by a lay person, the defendant himself. In this case there is no issue concerning the concurrence of the defendant himself, because he is seeking a commitment. It is unnecessary to determine under what circumstances, if any, a commitment may be ordered over the protests of the defendant, whether he be eligible or not.

Preliminarily it should be noted that the approval of defendant's contention might be of little service to him. The provisions governing the rehabilitation program were enacted as section 6400 et seq. of the Penal Code in 1961. (Stats. 1961, ch. 850, § 2, p. 2223.) Section 6451, upon which section 3051 of the Welfare and Institutions Code is predicated (see Stats. 1965, ch. 1226, §§ 1-2, p. 3062), did not contain the language quoted above. Section 6452 contained the exclusions discussed above which are now found in section 3052 of the Welfare and Institutions Code. The quoted language was added in 1963 (Stats. 1963, ch. 1706, § 8, p. 3354; and see Belton, *op. cit.,* 19 Hastings L.J. at pp. 637-646), and was carried forward in 1965 in the reenactment in the Welfare and Institutions Code. It would appear that but for the amendment, any addict excluded under the provisions of section 3052 would be without any recourse. (See *People* v. *Victor* (1965) 62 Cal.2d 280, 291, fn. 5 [42 Cal. Rptr. 199, 398 P.2d 391].)

If, therefore, the Legislature has improperly delegated judicial authority, it did not indicate an intention to confer it unconditionally. If the condition is invalid the whole amendment should be deleted. The remainder can only be enforced when an intention is manifest that the remainder should stand if a portion is found unconstitutional. (See *In re Perez* (1966) 65 Cal.2d 224, 231-232 [53 Cal.Rptr. 414, 418 P.2d 6]; and *In re Bell* (1942) 19 Cal.2d 488, 497-498 [122 P.2d 22].) "When a valid act is amended by an unconstitutional provision, the usual rule is that

only the amendment is invalid [citation]." (*Skyline Materials, Inc.* v. *City of Belmont* (1961) 198 Cal.App.2d 449, 459 [18 Cal.Rptr. 95]. See also *Danskin* v. *San Diego Unified Sch. Dist.* (1946) 28 Cal.2d 536, 555 [171 P.2d 885]; *Davis* v. *Municipal Court* (1966) 243 Cal.App.2d 55, 59 [52 Cal.Rptr. 189]; and *Buzard* v. *Justice Court* (1962) 198 Cal.App.2d 814, 817 [18 Cal.Rptr. 348] [revd. on other grounds 61 Cal.2d 833 [40 Cal.Rptr. 681, 395 P.2d 593]].)

 The substance of defendant's argument is predicated upon an analogy with the court's prerogative to dismiss a charged prior conviction in the interests of justice. (See Pen. Code, § 1385; *People* v. *Tenorio* (1970) 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993]; *People* v. *Sidener* (1962) 58 Cal.2d 645 [25 Cal.Rptr. 697, 375 P.2d 641], p. 652, Justice Schauer dissenting and pp. 674-675, Justice White dissenting; and *Singh* v. *Superior Court* (1919) 44 Cal.App. 64, 67 [185 P. 985].)

Section 1 of article III of the Constitution of the State of California provides, "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." In *People* v. *Tenorio, supra,* 3 Cal.3d 89 the court held that provisions of section 11718 of the Health and Safety Code, which purported to deny a court the right to dismiss a prior conviction except upon motion of the district attorney, were unconstitutional. The court stated, "The judicial power is compromised when a judge, who believes that a charge should be dismissed in the interests of justice, wishes to exercise the power to dismiss but finds that before he may do so he must bargain with the prosecutor. The judicial power must be independent, and a judge should never be required to pay for its exercise." (3 Cal.3d at p. 94.)

In *Tenorio* it was recognized that the power to strike prior convictions was an essential part of the judicial power referred to in the Constitution (*id.*, at pp. 92-94). In dealing with the question of what persons should be eligible for treatment under the rehabilitation program the Legislature, as has been noted in part I above, reasonably classified addicts so as to exclude from the program persons of a character and nature that would tend to render them less amenable to the services and program offered. In creating exceptions to this classification the Legislature was not curbing an essential part of the judicial power. It was establishing a new class of addict who would be eligible for treatment, that is, one, otherwise ineligible, whom the district attorney, after investigation, recommends for commitment. The question of approval by the authority in charge of the treatment facility is discussed below. As will be seen, there is nothing unreasonable or unconstitutional in making commitment and treatment

conditional upon such approval. So here, it is neither unreasonable nor an unconstitutional interference with the power of the judiciary to make special eligibility dependent on the concurrence of the district attorney. Defendant's attack on the proviso in section 3051 is rejected. (Cf. *People* v. *Marquez* (1966) 245 Cal.App.2d 253, 256 [53 Cal.Rptr. 854].)

The suggestion that defendant was subject to the whimsy of the particular prosecutor in the instant case is not meritorious. In 1968 the same prosecutor's office concurred in an order for commitment despite the defendant's prior convictions for robbery and possession of narcotics. Nevertheless, on this subsequent conviction the prosecutor was entitled to also consider the new conviction and the defendant's conduct in the interim. Nor, as is indicated below, was the prosecutor's refusal arbitrary and capricious. The Legislature has stated, "Persons committed to the program provided for in this chapter who are uncooperative with efforts to treat them or are otherwise unresponsive to treatment nevertheless should be kept in the program for purposes of control." (Welf. & Inst. Code, § 3000, in part; and see *People* v. *Lipscomb* (1968) 263 Cal.App.2d 59, 67 [69 Cal.Rptr. 127].) This declaration, however, must be read in connection with the express mandate set forth in sections 3051 and 3052.

### III

In order to fully consider defendant's remaining contention it is necessary to review the matters presented to the trial court as revealed by the probation report and the record of the proceedings leading to defendant's sentencing.

On September 7, 1964, the defendant was arrested in San Francisco following a drug store robbery. He plead guilty to robbery and to possession of narcotics as charged in a second information. Upon motion and following medical examination and a hearing, the defendant was committed to the California Rehabilitation Center under the provisions of section 6451 of the Penal Code.

He was apparently subsequently paroled, because on February 17, 1966 he was returned to the center from San Francisco as a parole violator. He was paroled again in October 1966. In October 1967 he surrendered himself to his parole officer and was confined in the San Francisco County jail for one week before being restored to his narcotic parole status.

On January 22, 1968 he was arrested on a charge involving fictitious checks. After a guilty plea, and proceedings regularly taken to that end, on April 11, 1968, he was again committed to the rehabilitation center by an order of the San Mateo County Superior Court. In December 1968 he

was paroled from the center again, but because of his failure to comply with the conditions of his parole, a warrant for his apprehension was issued in May 1969.

On June 27, 1969 the defendant was arrested at the scene of an apparent burglary. A search of his person by the arresting officers revealed a package containing five grains of heroin. The charge which led to his present conviction and sentence ensued.

Following the defendant's entry of his plea of guilty and admission of his prior convictions for robbery and possession of narcotics, proceedings were instituted for his commitment to a narcotic rehabilitation facility, on the People's petition and on defendant's motion. A probation report, reflecting the foregoing history of defendant, was prepared and filed. The report notes that the defendant's former parole agent under the rehabilitation program stated that the defendant made little attempt to comply with parole standards, that the defendant would not profit from additional CRC treatment, and that the defendant's attitude and behavior had deteriorated. The probation officer recommended commitment. He noted that a detective of a local police department had similarly recommended, and that defendant's codefendant was being so committed. The examining doctors found that the defendant was addicted to the use of narcotics, and each recommended that he be committed for treatment. The district attorney opposed the commitment on the grounds of defendant's prior robbery conviction, but manifested a disposition to accede to commitment if the facility would accept the defendant back. He also opposed the defendant's motion that the admitted priors be dismissed.

At the hearing on the motion for commitment the trial judge noted that there were two obstacles to the defendant's commitment. The first was whether he was eligible without the consent of the district attorney, and the second was whether the center would accept the defendant even if the district attorney consented. The judge indicated that he would confer with the director of the facility, and the defendant, with counsel, indicated that that procedure was agreeable to him.

At the adjourned hearing on the motion for commitment the judge indicated that he had suggested to the director that this might be an unusual case, but that the director "said under no circumstances would they accept [defendant]; if we sent him down they would send him right back; that three times is twice too often . . . he said no, he wouldn't accept the case since you had been down there and failed the program."

The court then asked the district attorney for his recommendation and he refused to recommend commitment notwithstanding section 3052. He

stated, ". . . I think Mr. Harris has been given every chance to benefit from the C.R.C. program. Mr. Woods apparently has informed the Court now, as the Court stated, they don't feel they should take him back, that there were some other programs available within the Department of Corrections, and I certainly think this is what should be done in a case of this kind."

The court recognized that the defendant had a "truly great problem with narcotic drug addiction and it seems to underly his entire history of criminality." It also noted that the defendant had had two opportunities to refrain from his habit when released on parole after a period of nonusage.

Defendant refers to the provisions of section 3000 which state, "Persons committed to the program provided for in this chapter who are uncooperative with efforts to treat them or are otherwise unresponsive to treatment nevertheless should be kept in the program for purposes of control." He claims these provisions indicate that continued addiction is no ground for the denial of further treatment. Reference, however, must again be made to the express terms of the law. At the time of sentencing section 3053 provided, and now provides: "If at any time following receipt at the facility of a person committed pursuant to this article, the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such narcotic detention, treatment and rehabilitation facility, he shall return the person to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted." It is obvious that the Legislature contemplated that there would be some addicts who were otherwise eligible, who would not be fit subjects for confinement or treatment in the facilities established by law. (See *People* v. *Hannagan* (1967) 248 Cal.App.2d 107, 114 [56 Cal.Rptr. 429].)

It is not enough to say that the defendant could not be refused because he was uncooperative or unresponsive. (See § 3000, *supra.*) It also appeared that defendant's continued addiction was accompanied by continued criminality. It is no answer to point to his acceptance in 1968 as overlooking this criminality, because in 1970 he had added to his record in that regard.

■ Ordinarily, if eligible, the defendant would be entitled to a period of examination and investigation before rejection (see § 3053). In this case, however, the defendant was not only prima facie ineligible for the program, he was also a violator of the parole granted him under the prior

commitments to the program, and, as such, his past history presumably was well known to the director of the facility.

■ Since the court was called upon to exercise its discretion under section 3051, it was entitled to make inquiries relevant to the exercise of that discretion. (See *In re Rascon* (1966) 64 Cal.2d 523, 527 [50 Cal.Rptr. 790, 413 P.2d 678]; *People v. Dominguez* (1969) 2 Cal.App.3d 1072, 1075 [83 Cal.Rptr. 226]; *People v. Hakeem* (1969) 268 Cal.App.2d 877, 881-882 [74 Cal.Rptr. 511] [cert. den. 396 U.S. 913 [24 L.Ed.2d 189, 90 S.Ct. 231]]; *People v. Armendariz* (1967) 253 Cal.App.2d 33, 36 [60 Cal.Rptr. 796]; *People v. Berry* (1967) 247 Cal.App.2d 846, 849 [56 Cal.Rptr. 123]; and *People v. Corona* (1965) 238 Cal.App.2d 914, 923 [48 Cal.Rptr. 193].)

"The narcotic rehabilitation program requires in the subject a certain amount of cooperation and willingness to accept responsibility. The Director of Corrections did not abuse his discretion in finding that defendant was unfit for commitment and the trial court properly so concluded." (*People v. Berry, supra,* 247 Cal.App.2d at p. 852.) The failure to benefit from a rehabilitation program has been recognized as a relevant reason for finding an addict is not a fit subject for confinement or treatment in the established facility. (See *In re Rascon, supra,* 64 Cal.2d 523, 528; *People v. Brothers* (1969) 270 Cal.App.2d 84, 88 [75 Cal.Rptr. 611]; *People v. Hannagan, supra,* 248 Cal.App.2d 107, 113; and *People v. Marquez, supra,* 245 Cal.App.2d 253, 257.)

■ It would have been an idle act to send the defendant to the facility only to have the director return him to any one of the respective courts involved for sentencing on one or more of his three outstanding convictions. (Cf. *People v. Superior Court, supra,* 2 Cal.3d 527, 534; *People v. Dominguez, supra,* 2 Cal.App.3d 1072, 1075; *People v. Brothers, supra,* 270 Cal.App.2d 84, 88; and *People v. Armendariz, supra,* 253 Cal.App.2d 33, 37.) The director did not abuse his discretion in advising the court that the defendant would be rejected for further treatment.

■ Nor did the court abuse its discretion in denying the defendant's motion for commitment. Where discretion to commit is vested with the court, its refusal to commit will not be disturbed in the absence of a show of abuse of discretion. (*People v. Berry, supra,* 247 Cal.App.2d 846, 849; *People v. Zapata, supra,* 220 Cal.App.2d 903, 913; and see *People v. Harris* (1969) 274 Cal.App.2d 826, 833-838 [79 Cal.Rptr. 352].) The defendant's record of criminality, together with his demonstrated inability

to profit from the narcotic rehabilitation program, amply support the court's ruling.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.