[Crim. No. 3372. Fifth Dist. Oct. 30, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
BERNICE MADDEN et al., Defendants and Appellants.

COUNSEL

Emory L. King, Jr., Paul Halvonik and Quin Denvir, State Public Defenders, under appointments by the Court of Appeal, Gary S. Goodpaster, Chief Assistant State Public Defender and Douglas R. Welch, Deputy State Public Defender, for Defendants and Appellants.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and Edmund D. McMurray, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FRETZ, J.*—Bernice Madden and Levi Williams appeal from judgments of conviction against each of them after a joint trial. Ms. Madden was charged in the information filed against her as follows:

Count I—sale of heroin, November 3, 1976 (Health & Saf. Code, § 11352, subd. (a)), one-half ounce or more (Pen. Code, § 1203.07, subd. (a) (2)).

Count II—possession of heroin for sale (Health & Saf. Code, § 11351, subd. (a)), one-half ounce or more (Pen. Code, § 1203.07, subd. (a) (1)).

Count III—sale of heroin, October 27, 1976.

The first two counts charged the same offenses against Mr. Williams. Count IV charged defendant Williams only with being a felon in possession of a pistol (Pen. Code, § 12021).

Defendants waived jury and the case was tried to the court. The parties stipulated the amount of heroin in the balloons (count III) was .4 grams and in a prophylactic (count I) was 49.6 grams.

The court found Madden guilty of counts I and III, not guilty of count II, and found to be true the Penal Code section 1203.07, subdivision (a) (2) allegation in count I.

The court found Williams guilty of count I and found to be true the Penal Code section 1203.07, subdivision (a) (2) allegation in count I. He was found not guilty of count II. He was found guilty of count IV.

Each defendant was sentenced to prison. Each filed timely notice of appeal.

CONTENTIONS

I. Each of the appellants contends that the mandatory prohibition of probation required by Penal Code section 1203.07, subdivision (a) (2) constitutes cruel and unusual punishment.

*Assigned by the Chairperson of the Judicial Council.

II.   Appellant Madden also contends the trial court abused its discretion in finding her unfit for commitment to the California Rehabilitation Center (hereinafter sometimes CRC).

### FACTS OF THE CASE

October 27, 1976, an informant, Glen Massingill, was searched by officers, fitted with a transmitter and given $168, $18 of which was to be used to purchase two ballons of heroin from appellant Madden, and $150 of which was to pay a debt Massingill owed to Madden. Massingill drove to Madden's residence followed by officers. He paid off his debt and purchased two balloons of heroin, which he later delivered to the officers.

November 2, 1976, Massingill returned to the Madden residence and talked with Madden and Williams about purchasing a half ounce of heroin. The appellants and Massingill agreed that the price should be $500 for the half ounce, and that the transaction would take place the next day.

On November 3, Massingill and his car were searched and he was given $500 to make the purchase. Massingill drove to appellant's residence, followed by officers who were monitoring the events. Massingill told Madden he had the money and wanted the half ounce of heroin. After Williams arrived, the appellants added Massingill's $500 to other money brought by Williams. Madden and Williams wanted an ounce and a half for themselves and were still short of sufficient money to buy two ounces.

Williams armed himself with a pistol and left with Madden. They were to buy two ounces of heroin. Madden left Massingill with some balloons of heroin which she told him to sell "to anybody who came to the door" if Massingill knew them.

When Madden and Williams returned, they were arrested and deputies found four balloons and a foil-wrapped prophylactic containing brown powder in Madden's clothing and another prophylactic of brown powder in her mouth. The total weight of heroin was approximately 50 grams.

Madden admitted to purchasing almost two ounces of heroin on November 3, stating that some was for Massingill and the rest was for herself. She also admitted she was an addict and a heavy user of heroin. Her physical condition was said to be "not good." On the day of appellants' arrest, Madden's arms showed the signs of heavy heroin use—collapsed veins, scarring, fresh, open wounds and scab wounds. Madden contends her habit cost up to $500 per day when the money was available. This high cost was said to be due to the fact that she had to "skin pop, so therefore I have to use twice as much drug as I ordinarily would." Madden testified that when she first began using heroin in 1973 she stole to support her habit. As her habit became more expensive, she began to sell some of the heroin that she bought to keep herself supplied.

Williams did not testify.

## DECISION
### I. THE MANDATORY PROHIBITION OF PROBATION REQUIRED BY PENAL CODE SECTION 1203.07, SUBDIVISION (a) (2) DOES NOT CONSTITUTE CRUEL OR UNUSUAL PUNISHMENT.

Cruel and/or unusual punishment is forbidden by the Eighth Amendment to the Constitution of the United States and by article I, section 17 of the Constitution of the State of California. Penal Code section 1203.07 provides that:

"(a)  . . . probation shall not be granted to, nor shall the execution nor imposition of sentence be suspended for, any of the following persons:

"   .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(2)  Any person who is convicted of violating section 11352 of the Health and Safety Code by selling or offering to sell one-half ounce or more, of a substance containing heroin.

In *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], the California Supreme Court recognized that a penalty which was not inherently cruel or unusual would nonetheless violate the cruel or unusual punishment clause if it were sufficiently disproportionate to the crime for which it was inflicted (*id.*, at p. 424). The court

outlined three techniques to be used in determining whether a particular penalty for a particular offense constitutes disproportionate punishment: (1) consideration of the nature of the offense and/or the offender with particular regard to the degree of danger both present to society; (2) comparison of the challenged penalty with the punishments prescribed in the same jurisdiction for different offenses which, by the same test, must be deemed more serious; (3) comparison of the challenged penalty with the punishments prescribed for the same offense in other jurisdictions having an identical or similar constitutional provision (*id.*, at pp. 425-427).

Respondent argues that *Lynch* should not be applied to this case because appellants are testing the legislative ban on probation for sale of one-half ounce or more of heroin, not the severity of their punishment. The lack of ability to grant probation creates a mandatory minimum sentence. Such a mandatory minimum sentence would be cruel and unusual if so disproportionate that it shocks the conscience and offends fundamental notions of human dignity. (*Lynch*, *supra*, 8 Cal.3d at p. 424.) We therefore apply the criteria of *Lynch*.

### THE NATURE OF THE OFFENSE AND THE OFFENDER

While the offense is nonviolent, it is "a serious and deadly offense against society" (*People* v. *Serna* (1975) 44 Cal.App.3d 717, 720 [139 Cal.Rptr. 426]). The *Serna* court observed that ". . . traffic in heroin is a major factor in contemporary crime. Not only is the recipient of the heroin endangered by its use, but criminal offenses against persons and property commonly arises out of the recipient's need for money to pay for the heroin." (*Ibid.*) Thus, although the crime of selling heroin does not involve direct violence to another person, the Legislature could reasonably conclude that it is one of the most serious offenses, leading indirectly to death, illness, and other crimes which may involve violence. As stated in the American Bar Association Standards for Criminal Justice, Standards Relating to Probation: "The legislature should authorize the sentencing court in every case to impose a sentence of probation. Exceptions to this principle are not favored and, if made, should be limited to the most serious offenses." (*Id.*, (Approved Draft 1970) std. 1.1 (a), italics added.)

In conformance with the American Bar Association standards and the language of *Serna*, the Legislature has said the sale of one-half ounce or more of heroin is a most serious offense.

█ Also relevant to this examination of the offense and offender are the following factors: the facts of the crime in question; the penological purposes of the prescribed punishment; and finally, whether there are rational gradations of culpability which can be drawn on the basis of the degree of injury to the victim or to society in general (*In re Foss* (1974) 10 Cal.3d 910, 919-920 [112 Cal.Rptr. 649, 519 P.2d 1073]). █ Appellants argue that the statute fails to make a logical gradation of culpability based on the injury to the victim or to society. The Legislature did delineate a point at which the sale of heroin becomes sufficiently serious to warrant denying probation: the sale of one-half ounce or more of a substance containing heroin. Appellants argue that the statute is defective in that it links the availability of probation to the weight of the substance containing heroin, not the weight of the heroin itself. Appellants argue that this gives an unwarranted advantage to those major suppliers of heroin who deal only in concentrated or "pure" heroin, while the small man who sells "cut" heroin on the street bears the brunt of this section. This means that the large dealer selling pure heroin can sell as much as 30 times the amount of heroin as the small dealer selling in "usable" amounts and still avoid the impact of section 1203.07.

A similar argument was made in *People v. Solorazano* (1978) 84 Cal.App.3d 413, 415-417 [148 Cal.Rptr. 696]. The court observed there: "This does not mean that the severity of these sanctions must be finely tuned to còrrespond to the amount of pure heroin involved in any given transaction. [The applicable sections] deal with the heroin traffic as it is carried on, not as it might be conducted. The Legislature knew...that as a practical matter every day sales of heroin do not involve the pure substance but a diluted mixture...." The Legislature has seen fit to define the cutoff point in terms of the type of substance containing heroin which usually passes from pusher to addict in the ordinary course of events. As observed in *In re Lynch, supra,* 8 Cal.3d at page 423, "[t]he choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, [etc.]..."

Appellants' argument that major heroin importers escape the effects of this section and may be eligible for probation is unconvincing. Although the statute does not specifically mention "importers" of heroin, one who brought large amounts of heroin into the country would, in all probability, be guilty of either possessing for sale one-half ounce or

more of a substance containing heroin or selling or offering to sell such quantities of heroin. Therefore, importers would be ineligible for probation under either subsection (1) or (2) of section 1203.07, subdivision (a).

Appellants also argue that the statute fails to differentiate between those who sell for profit and those who are forced to sell to meet the needs of their own addiction. It is argued that, to the extent punishments are imposed for sales conducted to meet an addict's own drug needs, this would constitute an impermissible punishment for status (see *In re Foss, supra,* 10 Cal.3d at p. 922). However, when the addict sells for monetary gain above and beyond that necessary to support his addiction, punishment for such sales is not attributable solely to his status as an addict. The Legislature, by banning probation only for those who deal in one-half ounce or more of a substance containing heroin, has made a reasonable attempt to delineate between those who deal in small quantities of heroin to support their addiction, and those who deal for profit.

Appellant Madden contends the penalty was unduly harsh because the evidence in the present case established she was only dealing in heroin to meet her own heavy drug needs. The frequency of sales by appellants and the quantity of heroin involved would normally suggest sales for profit. However, appellant Madden testified that she was required to use large amounts of heroin, up to a quarter ounce at a time, because her veins were destroyed and she was required to "skin pop" which required her to use twice as much heroin as she would otherwise need.

Although the testimony of appellant Madden depicts a vicious cycle of a heroin user forced to commit crimes to support her habit, the probation report pointed out that not only did appellant Madden negotiate the sale of one-half ounce of heroin, but she also had an additional one and one-half ounces of heroin at the time of her arrest. The evidence established that appellant sold heroin frequently and in large quantities, and demonstrated a high degree of sophistication regarding the manner of dealing. If appellant's testimony as to her vast need for heroin is believed,[1] it is conceivable she was merely selling to support her habit.

---

[1] There was other evidence regarding the degree of appellant's involvement with heroin. Massingill, who was also a heroin addict, testified regarding his observation of appellant Madden's heroin use. He said that he had stayed at appellant's residence for a period of about a month. During that time he observed that appellant would use

However, even if that were true, this factor alone would not invalidate the statute in question.

Even if a punishment is suspect under two of the *Lynch* criteria, it may still be upheld. That test is not to be mechanically applied (see *Smith* v. *Municipal Court* (1978) 78 Cal.App.3d 592, 599 [144 Cal.Rptr. 504]; *Bosco* v. *Justice Court* (1977) 77 Cal.App.3d 179, 189 [143 Cal.Rptr. 468]).

There was testimony appellant Williams did not take heroin, so no argument concerning users applies to him.

### COMPARISON WITH OTHER CALIFORNIA PENAL STATUTES

Appellants argue that the mandatory prison term under section 1203.07 is disproportionate because there is no such mandatory prison for the crimes of (1) burglary with explosives and (2) gang rape with infliction of torture or great bodily injury. However, anyone who committed burglary by explosives would also be in violation of Penal Code section 12303.3 (wrongful possession of destructive device or explosive with intent to injure or intimidate) and might also be in violation of several related sections (see §§ 12303, 12303.2, 12303.6, 12309 or 12310). Probation is prohibited for all of these violations (Pen. Code, § 12311); therefore, appellants' argument that probation is available to those who commit burglary by explosives is illusory.

As to gang rape, the 1978 Legislature added Penal Code section 264.2 providing probation shall not be granted to those who commit forcible rape or rape in concert with another person.

Respondent has directed this court to a very substantial number of situations where probation is *not* available in California—e.g., when a firearm is used in in the commission or attempted commission of murder, assault with intent to commit murder, robbery, kidnaping, certain forms of rape, and escape from prison or jail (Pen. Code, § 1203.06). Probation is also denied to persons over 18 who give or sell controlled substances to minors (Health & Saf. Code, § 11370, subd. (b)). Repeat

---

somewhere between four and six bags (valued at $9 each) during the daytime. He did not know how much she used at night. Also, during that month when Massingill stayed with appellant, there were only about five days when he did not see her leave the house with money and return with an ounce of heroin.

narcotics offenders are also denied probation under certain circumstances (Health & Saf. Code, § 11370, subd. (a); Pen. Code, § 1203.07, subd. (a) (3)). Persons convicted of a "designated felony" (including murder, kidnaping, robbery, assault with a deadly weapon, rape by force or violence, etc.) with two or more adult convictions for designated felonies within a ten-year period are also denied probation (Pen. Code, § 1203.08). There are also a number of offenses for which probation is forbidden "except in unusual cases where the interests of justice would be served if the person is granted probation" (Pen. Code, § 1203, subd. (d)).

A review of the above code sections demonstrates that heroin sellers who deal in the specified quantities have not been singled out by the Legislature for disproportionate punishment. Probation has been denied for a broad range of offenders—primarily those who commit violent crimes, serious drug offenses, and those who repeat serious offenses. Thus, it appears the denial of probation to the specified heroin dealers is not out of line with the other California penal statutes. The Legislature has required mandatory prison terms for a wide range of the more serious offenses.[2]

## COMPARISON WITH LAWS IN SISTER STATES

The final technique for determining whether a punishment is disproportionate is to compare it with punishments imposed under analogous statutes in other jurisdictions. Appellants and respondent have each compiled lists of the applicable laws in other jurisdictions.[3] While a comfortable majority of our sister states do permit probation for offenses similar to those involved here, it cannot be said that California has strayed from the "virtually unanimous judgment of our sister

[2]See *Smith* v. *Municipal Court, supra,* 78 Cal.App.3d 592, 598-599, where it is suggested that with the repeal of indeterminate sentencing the emphasis in penological purposes has shifted from reformation and rehabilitation to punishment. Under this new scheme, individualized "rehabilitative" sentencing is rejected in favor of definite, fixed terms without great regard for the characteristics of the individual offender. Mandatory prison terms are in line with this new approach.

[3]Appellants' list shows 37 states permitting probation and 12 states prohibiting probation for the offense involved here. Respondent's research disclosed slightly differing results from appellants' list. Respondent indicates that several states appellants show as prohibiting probation actually permit probation, whereas some of those states shown as forbidding probation on appellants' list do allow probation for an addict-seller as opposed to a nonuser-seller. Since the discrepancies between the statistics compiled by appellants and respondent go both ways, the two sides do not differ substantially as to the percentage of states allowing and banning probation.

states" (compare *In re Lynch, supra,* 8 Cal.3d 410, 436 and *People* v. *Serna, supra,* 44 Cal.App.3d 717, 722). The percentage of jurisdictions permitting probation under the circumstances of the present case is between 75 and 80 percent. California stands in the company of about 12 states who deny probation under circumstances similar to this case. Although our Legislature has adopted the minority position, this alone would not compel a finding that the probation ban is unconstitutional. In *Bosco* v. *Justice Court, supra,* 77 Cal.App.3d 179, 189, where the 90-day mandatory term was suspect under the second and third criteria, it could still be upheld, because in view of the nature of the offense it was not so disproportionate as to be unconstitutional.

The ban on probation for those who deal in one-half ounce or more of a substance containing heroin is not so disproportionate as to be unconstitutional. The offense of selling heroin, particularly in large quantities, leads indirectly to the destruction of lives and to many other crimes. The statute is not grossly out of line with other punishments in California or in a substantial number of other jurisdictions. It also appears to serve proper penological purposes—punishment and protection of society by removal of the heroin dealer from the street. While this ban on probation may also reach some offenders who are merely selling heroin to support their own habit, the possibility of commitment to CRC could mitigate the harsh effects of the probation ban on those offenders whose problems stem solely from their own narcotics addiction.

■ II. *The trial court abused its discretion in finding appellant Madden unfit for commitment to CRC.*

Appellant argues it was an abuse of discretion to deny her commitment to CRC.[4] The court gave the following reasons for finding appellant to be an unfit subject for CRC: "Now, the Court has considered a commitment to the California Rehabilitation Center and in the exercise of its discretion rejects such a disposition and finds that the Defendant is not suitable for commitment to CRC by reason of traf-

---

[4]Welfare and Institutions Code section 3051 establishes the procedure for a trial court to institute CRC commitment proceedings. That section provides in pertinent part: "Upon conviction of a defendant...if it appears to the judge that the defendant may be addicted or...in imminent danger of becoming addicted to narcotics he *shall* adjourn the proceedings...and order the district attorney to file a petition for commitment of the defendant to [the California Rehabilitation Center]...*unless*, in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section." (Italics added.)

ficking and possession of amounts of heroin beyond that which might reasonably be necessary to support her own immediate needs. Accordingly, that will have to be rejected."

The following principles govern the trial court's authority to determine when CRC commitment proceedings should be instituted. ■ It is settled that a trial court enjoys broad discretion in determining whether a defendant is a fit subject for CRC; the court's finding will not be upset if it is supported by the record, and the record fails to show an abuse of discretion (*People* v. *Flower* (1976) 62 Cal.App.3d 904, 911 [133 Cal.Rptr. 455]).[5] However, authorities are not in agreement regarding the factors which may be considered by the trial court in determining fitness for civil commitment. The Legislature has expressly provided that a trial judge is not required to institute commitment proceedings when "the defendant's record and probation report indicate such a *pattern of criminality* that he does not constitute a fit subject..." (Welf. & Inst. Code, § 3051, italics added). This is the only basis for a finding of unfitness mentioned expressly in that section.[6] Several Court of Appeal decisions have suggested that the only factor properly considered by the trial court in determining whether to institute commitment proceedings is excessive criminality; all other considerations should be left to the experts at CRC (see, e.g., *People* v. *Lopez* (1978) 81 Cal.App.3d 103, 110 [146 Cal.Rptr. 165]; *People* v. *Barajas* (1972) 26 Cal.App.3d 932, 937-938 [103 Cal.Rptr. 405]; *People* v. *Leonard* (1972) 25 Cal.App.3d 1131, 1136-1137 [102 Cal.Rptr. 435]; *People* v. *Hakeem* (1969) 268 Cal.App.2d 877, 881-882 [74 Cal.Rptr. 511]). Another line of authority suggests that a trial judge may consider the exclusionary criteria used at CRC to determine suitability for treatment; these cases suggest if it is clear that the director of corrections would not consider a defendant to be suitable for treatment, it would be an "idle act to send the defendant to the facility only

---

[5]However, the trial court's discretion should be exercised with a view towards implementing the legislative policy which favors inquiry into the addictive status of all criminal defendants if the record indicates the presence of an addiction problem. (*People* v. *Navarro* (1972) 7 Cal.3d 248, 262 [102 Cal.Rptr. 137, 497 P.2d 481]; *People* v. *Ortiz* (1964) 61 Cal.2d 249 [37 Cal.Rptr. 891, 391 P.2d 163].) Moreover, our Supreme Court has recently recognized the importance of a defendant's interest in receiving treatment at the CRC for his narcotics addiction; an addict defendant is entitled to procedural due process before the CRC can exclude him (*People* v. *Ramirez* (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316, 599 P.2d 622]).

[6]Additionally, section 3052 provides that these commitment proceedings shall not be available to persons convicted of certain designated crimes. There is no contention appellant is ineligible under this section.

to have the director return him" (see *People* v. *Harris* (1971) 17 Cal. App.3d 388, 399 [95 Cal.Rptr. 80], disapproved on another point in *People* v. *Navarro, supra,* 7 Cal.3d 248, 269; see also *In re Rascon* (1966) 64 Cal.2d 523, 528 [50 Cal.Rptr. 790, 413 P.2d 678]; see also Keene, L. A. Superior Court Benchbook, pp. 478-481).

■■■ This court has adopted the former position, that excessive criminality is the only factor which the trial court may consider (*People* v. *Lopez, supra,* 81 Cal.App.3d 103, 110). All other considerations should be left to the experts at the California Rehabilitation Center.

Applying *Lopez* here, we find the trial court abused its discretion in applying factors other than excessive criminality. The basis for the trial court's decision was that Madden was engaged in large scale trafficking—one of the CRC exclusionary criteria. None of the other exclusionary criteria appear to have been present here. The trial court should reconsider that question of whether Madden is a fit subject for commitment to CRC, considering only whether her criminal record demonstrates excessive criminality.

The judgment is affirmed as to appellant Levi Williams. As to appellant Bernice Madden, the conviction is affirmed but the case is remanded for reconsideration of whether appellant should be committed to CRC under the provisions of Welfare and Institutions Code section 3051.

Brown (G. A.), P. J., and Zenovich, J., concurred.